Liquor Liability Joint Underwriting Association of Massachusetts *v.* Hermitage Ins. Co.

The Liquor Liability Joint Underwriting
Association of Massachusetts *vs.* Hermitage
Insurance Company.

Suffolk. November 10, 1994. - January 13, 1995.

Present: Liacos, C.J., Abrams, Nolan, & Greaney, JJ.

*Insurance*, Liquor liability insurance, Insurer's obligation to defend, Construction of policy, Coverage. *Negligence*, Alcoholic liquors. *Damages*, Attorney's fees, Interest.

An endorsement in a commercial general liability insurance policy issued to a business licensed to serve alcoholic beverages that excluded an "assault and/or battery" from coverage was not adequately clear language to exclude coverage for a claim of negligent failure of the insured to provide security on its premises that resulted in one patron assaulting another; consequently the insurer violated its obligations under the policy to defend and to indemnify its insured by refusing to defend that claim. [319-323]

In a civil action brought by one insurer against a second insurer, seeking defense costs and the amount of a settlement incurred by the first insurer in connection with its defense of two claims against an insured, one of which was covered solely by the first policy and the second of which was covered solely by the second policy, wherein it was determined that the second insurer had wrongfully declined to defend the insured, this court concluded that the second insurer, by failing to participate in the proceedings, could not satisfy its burden of establishing allocation of the settlement between the two claims and thus was responsible for the entire amount. [323-324]

In a civil action the party that was awarded attorney's fees was to have the opportunity to present evidence on when it incurred attorney's fees and costs for purposes of the calculation of prejudgment interest thereon to which the party was entitled, and that party was to have prejudgment interest on the amount of the judgment as well, where the subrogation rights on which it based its claim were based on a settlement payment made before the institution of the civil action. [324-325]

CIVIL ACTION commenced in the Superior Court Department on October 16, 1992.

The case was heard by *Patrick J. King*, J., on motions for summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

*Erik Lund* (*Jon C. Cowen* with him) for the defendant.

*Steven L. Schreckinger* (*Janet M. Zipin* with him) for the plaintiff.

GREANEY, J. The plaintiff, the Liquor Liability Joint Underwriting Association of Massachusetts (JUA), brought an action for declaratory relief in the Superior Court pursuant to G. L. c. 231A (1992 ed.), against the defendant, Hermitage Insurance Company (Hermitage). JUA sought to recover from Hermitage defense costs and the amount of a settlement incurred by JUA in connection with a lawsuit against Lamplighter, Inc., a business licensed to serve alcoholic beverages which was a mutual insured of JUA and Hermitage. In the lawsuit, a patron of Lamplighter, who had been assaulted, claimed that the assault was caused by Lamplighter's negligence in serving alcoholic beverages to the person who committed the assault and in failing to provide adequate security on the premises. On cross motions for summary judgment, Mass. R. Civ. P 56 (a) and (b), 365 Mass. 824 (1974), a judge in the Superior Court concluded that Hermitage had violated its duties to defend and indemnify Lamplighter on the claim alleging negligent failure to provide security and, as a result, that Hermitage was responsible to JUA for one-half of the costs of the defense and the settlement. Both Hermitage and JUA appealed from the judgment, and we allowed Hermitage's application for direct appellate review. We conclude that Hermitage violated its obligations to defend Lamplighter on the claim alleging a negligent failure to provide security. We conclude, contrary to the judge's reasoning, that Hermitage is responsible to JUA for the full amount of the settlement paid by JUA in the underlying lawsuit. We also conclude that Hermitage is responsible to JUA for one-half of its defense costs. Finally,

we conclude that JUA is entitled to prejudgment interest on the money due it from Hermitage.

The undisputed material facts appear in the judge's memorandum of decision and may be summarized as follows. On April 4, 1990, Michael O'Brien, a patron at Lamplighter's establishment, was assaulted by another patron. O'Brien commenced a civil action in the Superior Court against Lamplighter and the person who committed the assault. Insofar as relevant to this appeal, O'Brien's complaint accused Lamplighter of negligence in serving alcoholic beverages (count I), and negligence in failing to provide adequate security for its patrons (count II).

At the time of the assault, Lamplighter had insurance policies with JUA and Hermitage. JUA is a nonprofit association created by the Legislature to provide liquor legal liability insurance to sellers and distributors of alcohol who were previously unable to obtain liability insurance in the private market. See St. 1985, c. 223, § 2. In keeping with its statutory mandate, JUA's policy with Lamplighter was limited to coverage for negligence in the distribution, sale, or serving of alcoholic beverages.[1]

Hermitage is a commercial general liability insurer. Hermitage issued Lamplighter a "Special Multi-Peril Policy" in which Hermitage provided coverage for liability due to bodily injury or property damage "caused by an occurrence." An "occurrence" is defined in the policy as "an accident . . . which results in bodily injury or property damage neither expected nor intended from the point of view of the insured." An endorsement to the policy provided that an "[a]ssault and/or battery shall not be deemed an accident under the . . . policy, nothing in the policy to the contrary." When purchasing the Hermitage policy, Lamplighter believed that coverage was provided for damages arising from fights

---

[1]Statute 1985, c. 223, § 1, defines "[l]iquor legal liability insurance" as "insurance coverage against the legal liability of the insured and against loss, damage, or expense incident to a claim arising out of death or injury to any person as result of negligence in the distribution, sale or serving of alcohol by any licensee."

419 Mass. 316                                                        319

Liquor Liability Joint Underwriting Association of Massachusetts *v.* Hermitage Ins. Co.

among patrons on its premises, and it would not have purchased the policy if that coverage was not provided.

As has been indicated, the O'Brien lawsuit contained two separate claims, one of which was within the scope of coverage in the JUA policy (the claim in count I alleging negligent serving of alcoholic beverages), the other of which was not (the claim in count II alleging a negligent failure to provide adequate security). Hermitage disclaimed any coverage on the claim under count II on the basis of the assault and battery endorsement in its policy, and JUA agreed to undertake Lamplighter's entire defense. Hermitage thereafter continued to disclaim coverage despite receiving a letter from JUA's counsel which outlined to Hermitage why count II of the O'Brien lawsuit stated a claim within the scope of Hermitage's coverage which Hermitage was obliged to defend.

The O'Brien action was tried to a jury resulting in a verdict for O'Brien against Lamplighter in the amount of $80,000. Although JUA requested a special verdict slip to enable the jury to apportion liability between count I and count II, the judge presiding at the trial denied the request, and a verdict was returned which did not differentiate between the two claims.[2] The judge allowed O'Brien's motion for costs in the amount of $5,787.92. Subsequently JUA and O'Brien entered into a "General Release and Settlement," pursuant to which the JUA paid O'Brien $90,000, and O'Brien's action was dismissed with prejudice.[3] JUA incurred $38,145.10 in attorney's fees and costs in defending Lamplighter. Thereafter, pursuant to a subrogation provision in its policy, Lamplighter assigned all its rights against Hermitage to JUA. The present action by JUA against Hermitage for declaratory relief followed.

1. Hermitage had a duty to defend Lamplighter if any allegations in the O'Brien complaint were reasonably suscepti-

[2]By a special verdict, the jury answered questions pertaining to Lamplighter's negligence and causation and then assessed the amount of damages which would "fairly and adequately" compensate O'Brien.

[3]The settlement was approximately $15,000 less than the amount of the judgment including interest and costs.

ble of an interpretation that they stated or adumbrated a claim covered by the Hermitage policy. See *Continental Casualty Co.* v. *Gilbane Bldg. Co.*, 391 Mass. 143, 146-147 (1984), and cases cited; *Sterilite Corp.* v. *Continental Casualty Co.*, 17 Mass. App. Ct. 316, 318 (1983), and authorities cited. It is undisputed that the first count of the O'Brien complaint, alleging that Lamplighter's employees had negligently served alcoholic beverages to the patron who assaulted O'Brien, is covered by the JUA policy and not covered by Hermitage's policy. With respect to the second count of the O'Brien complaint, alleging that Lamplighter failed to provide adequate security, Hermitage relies on the assault and battery endorsement in its policy as excusing it from any obligation to Lamplighter. In examining the endorsement, which amounts to an exclusion from coverage, we are required to "construe the words of the policy in their usual and ordinary sense," *Barnstable County Mut. Fire Ins. Co.* v. *Lally*, 374 Mass. 602, 605 (1978), taking into account "what an objectively reasonable insured, reading the relevant policy language, would expect to be covered." *Hazen Paper Co.* v. *United States Fidelity & Guar. Co.*, 407 Mass. 689, 700 (1990).

Hermitage points to decisions from other jurisdictions to support its argument that the language of the assault and battery endorsement was broad enough to exclude a claim based on an allegation of negligent failure to provide security. These cases, however, construe assault and battery provisions which are far more comprehensive than the Hermitage endorsement and which typically use language stating that *any claim arising out of, or based on, an assault and battery* is excluded from coverage whether committed by or at the direction of the insured or third parties.[4] The Hermitage en-

---

[4]For example, the assault and battery exclusion construed in *Kelly* v. *Figueiredo*, 223 Conn. 31, 32 (1992), reads as follows:

"ASSAULT AND BATTERY EXCLUSION: It is agreed that the insurance does not apply to bodily injury or property damage arising out of assault and battery or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by

# 419 Mass. 316                                    321

Liquor Liability Joint Underwriting Association of Massachusetts *v.* Hermitage Ins. Co.

dorsement is much less expansive and precise with respect to what it excludes.[5] Courts that have considered an exclusion like the one in the Hermitage policy are divided on whether such a provision is comprehensive enough to exclude negligence claims from coverage, some courts holding that it is, see, e.g., *Hermitage Ins. Co. v. Dahms*, 842 F. Supp. 319, 325-326 (N.D. Ill. 1984); *Tarrant County Ice Sports, Inc. v. Equitable Gen. Life Ins. Co.*, 62 S.W.2d 129 (Tex. Ct. App.

---

or at the instigation or direction of the insured, his employees, patrons or any other person."

Other examples of broadly worded exclusions which were considered encompassing enough to exclude any claim arising out of an assault and battery may be seen in *United States Nat'l Ins. Co. v. Entertainment Group, Inc.*, 945 F.2d 210, 213 (7th Cir. 1991); *Terra Nova Ins. Co. v. Nanticoke Pines, Ltd.*, 743 F. Supp. 293, 297 (D. Del. 1990); *Stiglich v. Tracks, D.C., Inc.*, 721 F. Supp. 1386, 1387 (D.C. 1989); *Terra Nova Ins. Co. v. North Carolina Ted, Inc.*, 715 F. Supp. 688, 690 (E.D. Pa. 1989); *Gregory v. Western World Ins. Co.*, 481 So. 2d 878 (Ala. 1985); *Britamco Underwriters, Inc. v. Zuma Corp.*, 576 So. 2d 965 (Fla. Dist. Ct. App. 1991); *Dynamic Cleaning Serv., Inc. v. First Fin. Ins. Co.*, 208 Ga. 33, 34 (1993); *Britamco Underwriters, Inc. v. J.O.C. Enters., Inc.*, 252 Ill. App. 3d 96, 97 (1993); *Essex Ins. Co. v. Fieldhouse Inc.*, 506 N.W.2d 772, 774 (Iowa 1993); *Taylor v. Duplechain*, 469 So. 2d 472, 473 (La. Ct. App. 1985); *Roloff v. Taste of Minnesota*, 488 N.W.2d 325, 326 (Minn. Ct. App. 1992); *Ross v. Minneapolis*, 408 N.W.2d 911, 912 (Minn. Ct. App. 1987); *Garrison v. Fielding Reinsurance Inc.*, 765 S.W.2d 536, 537 (Tex. Ct. App. 1989).

[5] A Hermitage endorsement issued to another insured, after the date of the assault on O'Brien, was much more precise with respect to excluded coverage. That endorsement provided:

"Assault and/or battery shall not be deemed an accident under the above mentioned policy. [Hermitage] shall not be obligated to pay on behalf of or defend the insured for any claim alleging an assault and/or battery no matter how the assault and/or battery is alleged to have occurred.

"It is understood and agreed that this insurance does not apply to bodily injury or property damage arising or alleged to arise out of:

"A) An assault and/or battery caused by or at the instigation or direction of: 1) the insured, his agent or employee; 2) any patron of the insured; or 3) any other person; or

"B) Any act or omission of the insured, his agent or employee in connection with the prevention or suppression of an assault and/or battery or criminal acts by third parties."

1983), and other courts holding that it is not, see, e.g., *Mount Vernon Fire Ins.* v. *Creative Hous. Ltd.*, 797 F. Supp. 176 (E.D.N.Y. 1992); *2500 Motel Corp.* v. *Investors Ins. Co.*, 169 A.D.2d 604, 605 (N.Y. 1991). See also *Sphere Drake Ins. Co.* v. *P.B.L. Entertainment, Inc.*, 30 F.3d 21, 22-23 (2d Cir. 1994) (holding, under New York law, that even broad form of assault and battéry exclusion will not excuse insurer from defending negligence claim).

We think, as did the judge below, that the Hermitage endorsement is susceptible of at least two rational interpretations, the one placed on it by Hermitage, that the provision excludes any coverage for a negligence claim related to an assault and battery, and the other, the interpretation placed on it by Lamplighter, that the exclusion applies only to intentional damage caused by, or at the direction of, the insured, its agents, or its employees, and not to a negligence claim following an assault or battery committed by an unrelated third party. In this respect, the O'Brien claim would involve an "accident" under an "occurrence" policy like Hermitage's because Lamplighter would not have known to a substantial certainty that bodily injury it could have guarded against would result from conduct by its patrons. See *Quincy Mut. Fire Ins. Co.* v. *Abernathy*, 393 Mass. 81, 86 (1984). See also *Sheehan* v. *Goriansky*, 321 Mass. 200, 204-205 (1947). If Hermitage had intended to preclude coverage to Lamplighter for a claim based on an allegation of negligent failure to provide security, it could have done so " 'in clear and unmistakable' language." *2500 Motel Corp.* v. *Investors Ins. Co.*, *supra* at 605, quoting *Kratzenstein* v. *Western Assurance Co.*, 116 N.Y. 54, 59 (1889). See *Boston Symphony Orchestra, Inc.* v. *Commercial Union Ins. Co.*, 406 Mass. 7, 13 (1989). We think that the Hermitage endorsement fails to state a comprehensive exclusion with adequate clarity. When "construing unclear language in an insurance policy, the insured must be favored over the insurer." *Pinheiro* v. *Medical Malpractice Joint Underwriting Ass'n of Mass.*, 406 Mass. 288, 294 (1989), and cases cited. By refusing to defend Lamplighter on count II of the O'Brien lawsuit, Hermitage

was in violation of its obligations under its policy to defend and to indemnify.

2. We have said that an insurer who has committed a breach of its contractual duty to defend its insured is liable "for the natural consequences of [the] breach of contract that places its insured in a worse position," and that "an obligation to pay settlement costs could result from a breach of the duty to defend." *Polaroid Corp.* v. *Travelers Indem. Co.*, 414 Mass. 747, 764 (1993). We have also indicated that "an insurer that wrongfully declines to defend a claim will have the burden of proving that the claim was not within its policy's coverage." *Id.* We have not yet considered a situation like the present one where the underlying action involves a claim which was within the coverage of the defaulting insurer and should have been defended, and a claim which the defaulting insurer was not obligated to defend. See *id.* at 766 n.23 ("we have not indicated what should happen [for the purposes of assessing damages] if the settlement involved a claim or claims partly within and partly not within the policy coverage").

We are faced here with a settlement that followed the return of a jury verdict in the O'Brien lawsuit which found Lamplighter causally negligent and awarded damages which were not apportioned between the claims which were covered by different insurers. See note 2, *supra*. JUA carefully advised Hermitage of its duty and otherwise fully satisfied its obligations. There is no question that the settlement reached by JUA with O'Brien after the jury's verdict is noncollusive and reasonable. Hermitage could have defended under a reservation of rights. See *Restighini* v. *Hanagan*, 302 Mass. 151, 153-154 (1939). As the judge observed, had Hermitage participated, and explained to the trial judge in the O'Brien action the need for a verdict which would require the jury separately to state their findings as to liability and damages between the two claims, it is likely that the judge would have employed other special questions to accomplish that result.

Consistent with the rule in the *Polaroid* case, *id.* at 764 & n.22, on the burden of proof, Hermitage, in the present cir-

cumstances, should have the burden of allocating the judgment in the O'Brien lawsuit between the covered claim and noncovered claim. See *Duke* v. *Hoch*, 468 F.2d 973, 979-980 (5th Cir. 1972) (failure of insurer fully to advise insured of divergence of interest between it and insured with respect to verdict required the insurer to establish the allocation); A.D. Windt, Insurance Claims and Disputes § 6.25, at 343-344 (1988) (if insurer failed to seek allocated verdict, burden of persuasion should be placed on insurer). Hermitage cannot satisfy this burden, and any attempt on its part to do so would be speculative and arbitrary, essentially amounting to an attempt "to determine the particular amount that happened to be in the jur[ors'] mind[s] as [they] returned the verdict." *Universal Underwriters Ins. Corp.* v. *Reynolds*, 129 So. 2d 689, 691 (Fla. Dist. Ct. App. 1961). We conclude that Hermitage is liable to JUA for the entire $90,000 settlement.[6]

3. The judgment that entered in JUA's favor was in the amount of $64,356.55 plus interest and costs. JUA brought a motion pursuant to Mass. R. Civ. P. 59 (e), 365 Mass. 827 (1974), to amend the judgment to correct an error in the calculation of attorney's fees due to it, and to provide information necessary for the calculation of the prejudgment interest on the portion of the judgment reflecting attorney's fees. (Prejudgment interest on attorney's fees is calculated based on the date on which the expenses were incurred. See *Liberty Mut. Ins. Co.* v. *Continental Casualty Co.*, 771 F.2d 579,

---

[6]The judge divided the $90,000 settlement equally because he considered that result more equitable and consistent with the "other insurance" clauses in the JUA and Hermitage policies. As has been indicated, we think Hermitage should be responsible for the entire loss because it cannot meet its burden of proof.

The "other insurance" clauses in the JUA and Hermitage policies provide for proration of damages when multiple policies apply. The clauses do not come into effect unless the policies cover the same risk. Here the JUA and Hermitage policies do not have an identity of risk. Each policy covers a different risk. There is no overlapping insurance and, accordingly, no basis exists to prorate the damages. See 8A J.A. Appleman & J. Appleman, Insurance § 4907.65, at 367-368 (1981).

583-584 [1st Cir. 1985].) Based on the motion, the judge corrected the error in the calculation of attorney's fees, but declined to calculate prejudgment interest on the attorney's fees and costs "because there was no evidence establishing when the attorney's fees and costs were paid."

JUA's motion under rule 59 (e) may not have been timely, but it would, in any event, deserve consideration as a motion under Mass. R. Civ. P. 60 (a), 365 Mass. 828 (1974), to correct an error or omission in the judgment. See *Worsnop* v. *Texaco, Inc.*, 386 Mass. 1005, 1006 (1982).[7] The judge acted on the merits of the motion by making a correction in the judgment and denying relief with respect to the request for prejudgment interest on the attorney's fees and costs. It is clear from the record that JUA paid the settlement in the O'Brien lawsuit on August 21, 1992, and JUA should have prejudgment interest on the $90,000 from that date. We also think the award of attorney's fees and costs to JUA was proper, [8] see A.D. Windt, Insurance Claims and Disputes, *supra* at § 4.10, and that JUA should have the opportunity to present evidence on when the attorney's fees and costs were paid so that prejudgment interest can be calculated thereon. See *Continental Casualty Co.* v. *Canadian Universal Ins. Co.*, 924 F.2d 370, 379 (1st Cir. 1991).

4. The judgment is vacated. JUA is to be furnished the opportunity to show when the attorney's fees and costs were

---

[7]In fact, JUA did not seek to alter or amend the judgment, which provided for payment of prejudgment interest on the award of attorney's fees. By its motion, it sought to provide the clerk of the court with information necessary for the computation of prejudgment interest, already awarded, on the portion of the judgment representing attorney's fees. The motion does not fit neatly under either rule 59 (e) or Mass.R.Civ.P. 60 (a), 365 Mass. 828 (1974), but it does not involve a matter of such substance that consideration under rule 59 (e) would be required. See *Worsnop* v. *Texaco, Inc.*, 386 Mass. 1005, 1006 (1982) (clerk's action in adding interest to judgment is not ruling of law to which time limits of rule 59 (e) would apply).

[8]The judge ordered Hermitage to pay one-half of the attorney's fees incurred by JUA in the defense and settlement of the O'Brien action. This amounted to $19,072.55. JUA agrees that this is the sum due on the attorney's fees issue.

paid. When that issue is determined, a new judgment is to be entered (a) declaring that Hermitage violated its duty to defend its insured on the claim alleging negligent failure to provide security; (b) awarding JUA $90,000 in damages with prejudgment interest from August 21, 1992; and (c) awarding JUA $19,072.85 in attorney's fees and costs with prejudgment interest from the date or dates the fees and costs were paid.

*So ordered.*