Gants, Ralph D., J.
The defendant Charles Spadoni (“Spadoni”) had served as vice president and general counsel of Triumph Capital Group, Inc. (“Triumph”), a private equity management firm. On October 11, 2000, Spadoni, along with Triumph and its chief executive officer, was indicted in the United States District Court for the District of Connecticut, charged with racketeering, bribery, obstruction of justice, and mail and wire fraud. All of these charges stemmed from the allegation that Spadoni had participated in a scheme to pay a $2 million bribe to the Treasurer of the State of Connecticut to induce the Treasurer to select Triumph as the investment manager for $200 million in state pension funds. On July 16, 2003, following a jury trial, Spadoni was found guilty of eight counts in the indictment, including those charges described above. On July 30, 2003, Spadoni filed a motion for new trial. That motion was denied on September 7, 2006.[1] On October 25, 2006, Spadoni was sentenced to serve three years in prison and a judgment was entered against him.
The plaintiff Chubb Custom Insurance Company (“Chubb”) had issued to Triumph on August 24, 1998 *193 a Venture Capital Asset Protection Policy (“the Policy”) that provided coverage to Triumph and Spadoni, as an officer of Triumph (and therefore an Insured Person under the Policy), for Losses that they became legally obligated to pay resulting from claims for wrongful acts they allegedly committed during the Policy period. Losses expressly included defense costs. Chubb paid Spadoni’s defense costs under a reservation of rights through trial and his motion for new trial.[2]
This is the second motion for summary judgment in this case. In the first, the parties cross moved for judicial declarations as to coverage for defense costs. Chubb contended that, because of various Policy exclusions, the Policy did not provide coverage for Spadoni’s defense costs and it was entitled to recoup the amounts already advanced to Spadoni. Spadoni argued that the Policy provided coverage for Spadoni’s defense costs and that Chubb had no right to recoup from Spadoni any of the funds advanced to pay his defense costs. Judge Nonnie Bumes found Spadoni’s arguments persuasive and, at the end of a 59-page Memorandum of Decision and Order on All Parties’ Motions for Summary Judgment issued on March 1, 2006 (“the March 1, 2006 Decision”), declared:
1. The Policy provides coverage for Spadoni’s defense costs;
2. Chubb has no right to recoup from Spadoni funds advanced to Triumph for Spadoni’s defense costs;
3. The Policy requires Chubb to continue paying Spadoni’s defense costs at least up until the time final judgments are reached in the S.E.C. action and the criminal action.
March 1,2006 Decision at 58. Judge Bumes expressly declared, “The court makes no declaration as to . . . whether Chubb must pay any attorneys fees for Spadoni for defense costs incurred after Spadoni is sentenced, if that ever occurs.” Id. As noted above, Spadoni’s sentencing finally did occur and a judgment was entered, and the parties have now brought this second motion asking this Court to make a declaration of coverage as to the question Judge Burnes specifically reserved — whether the Policy provides coverage to Spadoni for the defense costs he has incurred and is incurring following his criminal judgment.
DISCUSSION
“The interpretation of policy language is a question of law for the judge . . .” A.W. Chesterton Co. v. Mass. Insurers Insolvency Fund, 445 Mass. 502, 518 (2005). When interpreting an insurance policy a court should inquire “what the simplified, conversational language of the policy would mean to a reader applying normal reasoning or analysis.” Commerce Ins. Co. v. Koch, 25 Mass.App.Ct. 383, 384 (1988). See also Liquor Liab. Joint Underwriting Assoc. v. Hermitage, 419 Mass. 316, 320 (1995) (holding words of policy should be construed in the “usual and ordinary sense”); Bilodeau v. Lumbermans Mut Cos. Co., 392 Mass. 537, 541 (1984) (policy will be interpreted according to “fair meaning of the language used, as applied to the subject matter”). The primary objective in interpreting a contract for insurance is to construe the contract so as to reflect the intention of the parties at the time the policy was executed. Affiliated FM Ins. Co. v. Constr. Reinsurance Corp., 416 Mass. 839, 845 (1994).
Exclusionary clauses are interpreted in much the same way as other policy language: a court is “required to ‘construe the words of the policy in their usual and ordinary sense.’ ” Liquor Liab., 419 Mass. at 320, quoting Lally, 374 Mass. at 605. If the exclusionary terms are clear and unambiguous, they will be interpreted and applied in accordance with their plain and ordinary meaning. See id. However, since an insurance policy is essentially an adhesion contract drafted by the insurer, if a court determines that the language of an exclusion is ambiguous, the exclusion from coverage is “to be strictly construed,” and any ambiguity “must be construed against the insurer.” Hakim v. Massachusetts Insurers’ Insolvency Fund, 424 Mass. 275, 282 (1997); Hingham Mut. Fire Ins. Co. v. Niagara Fire Ins. Co., 46 Mass.App.Ct. 500, 504 (1999).
The Policy plainly provides coverage for defense costs, including reasonable attorneys fees, incurred when an insured person, such as Spadoni, becomes a defendant in a criminal proceeding. It equally plainly provides for various exclusions from coverage, including exclusion (h), the focus of this motion, which provides:
[Chubb] shall not be liable for Loss on account of any Claim made against any Insured . . . based upon, arising from, or in consequence of any dishonest or deliberately criminal or deliberately fraudulent act or omission or any willful violation of any statute or regulation by such Insured if a judgment or other final adjudication adverse to such Insured establishes dishonest or deliberately criminal or deliberately fraudulent act or omission or willful violation.
Policy at 3-4. There is no dispute that Spadoni’s criminal conviction was based upon, arose from, and was in consequence of a dishonest or deliberately criminal or fraudulent act. Nor is there any dispute that a judgment has entered adverse to Spadoni that established his dishonest or deliberately criminal or fraudulent acts. Rather, the only dispute is focused on the meaning of the phrase “judgment or other final adjudication.” Spadoni contends that his criminal conviction does not become final until he has exhausted his direct appeals, and that Chubb is therefore obliged to provide coverage for all his defense costs on direct appeal. Chubb contends that, under this exclusion, Spadoni’s coverage for defense costs ends upon the entering of the criminal judgment. This Court finds that Chubb is correct in its interpretation of the exclusion.
*194 Exclusion (h) specifically provides that the Policy will not cover losses, including defense costs, arising from a “dishonest or deliberately criminal or deliberately fraudulent act or omission or willful violation” when a “judgment or other final adjudication” has established that the insured person indeed committed a “dishonest or deliberately criminal or deliberately fraudulent act or omission or willful violation.” A criminal judgment, such as that entered against Spadoni, does precisely that. It reflects the finding of guilt by the jury and the court’s sentence. See Fed.R.Crim.P. 32(k)(l). In short, the Policy essentially provides that it will cover an insured person’s defense costs in a criminal action unless and until that insured person is convicted and sentenced, as reflected in a judgment. After that, on appeal, the insured person must pay his own defense costs.
Spadoni tries to pierce the simplicity of this understanding of exclusion (h) in two ways, neither of which is persuasive. First, since the word “judgment” in exclusion (h) is followed by the words “or other final adjudication," Spadoni contends that a judgment must also be a form of final adjudication. He then argues that a criminal adjudication is not “final” until the defendant has exhausted his right of direct appeal, noting that, if Spadoni were to drop dead today, while his appeal is pending, the judgment against him would be dismissed. See United States v. Estate of Parson, 367 F.3d 409, 418 (5th Cir. 2004) (under the “finality rationale,” if a defendant appeals his federal conviction to the Court of Appeals and dies before it rendered its decision, the interests of justice ordinarily require that he not stand convicted).
There are at least two fatal flaws in this argument. First, the phrase “judgment or other final adjudication” is disjunctive, so a judgment of conviction would still be sufficient by itself to bar coverage even if it were not a final adjudication. Second, a judgment is indeed a final adjudication — not final in the sense of bringing final closure to a criminal case, but final in the sense that the consequences of a criminal conviction may now be imposed and the case is ripe for appeal. See New England Insurance Company v. Sylvia, 783 F.Sup. 6, 8 (D.N.H. 1991) (criminal judgment pending appeal is a “final adjudication” under Policy exclusion). Upon a “judgment or other final adjudication,” the defendant, previously shielded by the presumption of innocence, may now be ordered to commence serving his sentence. Indeed, as a matter of federal law, upon a judgment, the defendant must commence serving time under his criminal sentence unless the court finds that the defendant’s appeal raises “a substantial question of law or fact likely to result” either in a new trial, reversal of his conviction, or a substantially reduced sentence. 18 U.S.C. §3143(b). Upon a judgment, the criminal conviction may also have collateral estoppel consequence in related civil proceedings, even while the conviction remains on appeal. See United States v. Parcels of Real Prop. with Bldg., 913 F.2d 1, 4 (1st. Cir. 1990). The case may also be appealed, without meeting the formidable requirements for an interlocutory appeal. See 28 U.S.C. §1291; Florida v. Thomas, 532 U.S. 774, 774 (2001) (“[i]n a criminal prosecution, finality is generally defined by a judgment of conviction and the imposition of a sentence”); Burrell v. United States, 467 F.3d 160, 163 (2d Cir. 2006) (“A criminal judgment becomes final for purposes of appellate review . . . after the district court sentences the defendant and disassociates itself from the case").
Spadoni also observes that the definition of a Claim includes a civil, criminal and formal administrative proceeding and “any appeal therefrom.” Policy at 11. He argues that it is inconsistent for the Policy to include criminal appeals among the Claims for which the insured person is covered, but then exclude the payment of defense costs on appeal. This argument also suffers from two fatal flaws. First, the very essence of an exclusion is that it excludes from coverage some claims that otherwise are within the scope of coverage; there is nothing inconsistent in doing so. Second, exclusion (h) does not eliminate from coverage all appeals for which defense costs are paid under the Policy; it eliminates only those appeals from judgments or other final adjudications establishing that the insured person committed a “dishonest or deliberately criminal or deliberately fraudulent act or omission or willful violation.” Policy at 4. The Policy still provides coverage for defense costs incurred on appeal of a criminal conviction for a strict liability crime, or on appeal of civil or administrative adjudications where the insured person has been found simply to have been negligent or reckless, but not to have acted intentionally, fraudulently, or willfully.
ORDER
For the reasons stated above, this Court ORDERS that:
1. Spadoni’s motion for partial summary judgment is DENIED;
2. Chubb’s motion for partial summary judgment is ALLOWED. This Court declares, as a matter of law, that under exclusion (h) of the Policy, Chubb is no longer liable for Loss on this Claim incurred by Spadoni after October 25, 2006, when the criminal judgment against Spadoni entered.

The record does not reflect any explanation for this extraordinary three-year delay in resolving the motion for new trial.

It appears that Chubb initially repaid Triumph for the advances it made to Spadoni for his defense costs under the indemnification provision ofTriumph’s by-laws and later paid Spadoni directly once Triumph became incapable financially of advancing these costs.