# United States Court of Appeals

## For the First Circuit

No. 08-1733

EMPLOYERS REINSURANCE CORPORATION,

Plaintiff, Appellee,

v.

GLOBE NEWSPAPER COMPANY, INC. and RICHARD A. KNOX,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Boudin, Siler[*] and Howard,

Circuit Judges.

Jonathan M. Albano with whom Robert A. Buhlman, Carol E. Head, Bingham McCutchen LLP, and George Freeman, The New York Times Company, were on brief for appellants.
Richard E. Quinby with whom Daniel C. Reiser, Lauren J. Coppola and Craig and Macauley Professional Corporation were on brief for appellee.

March 19, 2009

---

[*]Of the Sixth Circuit, sitting by designation.

**BOUDIN, <u>Circuit Judge</u>**.  This case involves a dispute over whether insurance coverage is barred by the "known loss" doctrine under Massachusetts law.  The appellants are Globe Newspaper Company which owns the <u>Boston Globe</u> (we refer to both as "the <u>Globe</u>") and Richard Knox, a former <u>Globe</u> columnist; plaintiff-appellee is the insurer, Employers Reinsurance Corporation ("Employers").  A condensed description of the events and litigation will set the scene.

In November 1994, a doctor at the Dana-Farber Cancer Institute in Boston mistakenly gave two breast cancer patients a chemotherapy dose four times greater than that specified in the experimental treatment protocol.  One of the patients, Betsy Lehman, then a <u>Globe</u> columnist, died of heart failure on December 3, 1994.  The other patient survived but suffered debilitating heart damage.

After the cause of the deaths was uncovered in February 1995, the <u>Globe</u> published a series of articles beginning on March 23, 1995.  This first article, by columnist Richard Knox, identified Dr. Lois Ayash, who was the protocol chair and chief investigator for the treatment, as the "leader of the team" and said that she had countersigned the mistaken overdose order.  In fact, Dr. Ayash had become Lehman's attending physician on December 1, 1994, after the overdose had been administered, and had not countersigned the order.

There followed <u>Globe</u> articles in March which criticized Dana-Farber in scorching terms; they did not mention Dr. Ayash, but she was the only person the <u>Globe</u> had previously named. On March 31, 1995, Joan Lukey, a highly experienced litigator with a large Boston law firm, contacted the <u>Globe</u>'s outside counsel, Jonathan Albano, about the March 23 article. After checking into these complaints, Albano concluded that Ayash had not countersigned the order but that she could properly be characterized as the "leader" of the team.

After further conversations by Lukey with Albano and Knox, Knox published an article on May 2, 1995, saying: "Ayash did not sign the erroneous drug order, as the <u>Globe</u> reported on March 23, Lukey said." Lukey wrote a week later, complaining that the <u>Globe</u> had not admitted its factual error but merely described Lukey's position, and stating that it "would also appear to be an appropriate time to discuss how the <u>Globe</u> will recompense Dr. Ayash's damages."

Follow up discussions led to a <u>Globe</u> correction published on June 4, 1995, which admitted that Dr. Ayash had been incorrectly identified as countersigning the order in question. Over the summer, Lukey had further discussions with Knox about forthcoming stories about the incident and related matters but apparently did not contact Albano again until late October. Albano had made clear

-3-

that the Globe was not planning to pay damages; but Lukey had not withdrawn the request for damages included in her May letter.

On October 12, 1995, the Globe applied for an insurance policy with Employers. In its application, the Globe listed actual past and present litigation but did not list Lukey's demand, noting only that it received many threats from people seeking to have the Globe print more favorable information about them and that it was difficult to separate the inconsequential threats from the serious ones.

Employers opted to provide coverage for various torts including libel, and to provide defense costs for covered law suits; the coverage began on October 20, 1995. The policy also contained a prior acts endorsement, which covered liability stemming from pre-policy acts as long as the Globe did not have notice of them and no other insurer provided coverage.

On October 31, 1995, despite an objection by Lukey, the Globe ran a new article referring to Ayash as the "doctor in charge of the treatment protocol"; noted that she had been formally reprimanded by Dana-Farber; and asserted that she was under investigation by the state medical licensing board--information Lukey claimed to be confidential. Thereafter, in February 1996, Dr. Ayash sued the Globe and others including Knox in state court; the claims against the Globe and its columnist included libel and invasion of privacy.

During the state court proceedings, the Globe suffered a sanctions order (for refusing to disclose Knox's confidential sources for certain material) and ultimately a default judgment as to liability.  Ayash v. Dana-Farber Cancer Inst., No. 96-565-E, 2001 WL 360054 (Mass. Super. Apr. 4, 2001).  A jury awarded Ayash $420,000 against Knox and $1.68 million against the Globe for economic damages and emotional distress.  The judgment was upheld, Ayash v. Dana-Farber Cancer Inst., 822 N.E.2d 667 (Mass.), cert. denied, 546 U.S. 927 (2005), and Employers later paid the judgment and defense costs, with a reservation of rights.

The present case arises from a federal-court declaratory judgment suit begun earlier by Employers against the Globe to determine coverage; it was reactivated in the summer of 2005 when state court proceedings ended.  In the district court, Employers' complaint denied coverage under the policy and advanced various claims against the Globe; the Globe countered with a breach of contract claim among others.  Both sides moved for summary judgment.

On June 20, 2006, the district court granted partial summary judgment to Employers, holding that the policy did not cover the Ayash state-court action either as to the damage judgment that the Globe had suffered or the defense costs it had incurred.  Employers Reins. Corp. v. Globe Newspaper Co., Inc., No. 03-10388-RWZ, 2006 WL 1738342 (D. Mass. 2006).  The court relied on the known loss

doctrine under Massachusetts law, which prevents the insured from recovering for a loss already known by the insured to have occurred when the policy was obtained or to be "substantially probable" at that time. SCA Servs., Inc. v. Transp. Ins. Co., 646 N.E.2d 394, 397 (Mass. 1995).

The district court recognized that the October 31, 2005, article, which was part of Ayash's suit, occurred after the policy had been purchased. But it held that the article republished material from the earlier March 2005 article for which Lukey had sought compensation and that to allow recovery for republication would "pervert the purpose of the known loss doctrine . . . ." Employers Reins. Corp., 2006 WL 1738342, at *5. Coverage for the earlier articles also failed, seemingly for this reason and under the "notice" provision of the prior acts endorsement.

The court also granted summary judgment for Employers as to mirror claims by the Globe requesting a declaration that it had coverage; but it denied Employers' request for summary judgment ordering repayment of amounts advanced to or for the Globe, saying that the request had not yet been justified. However, the court granted the parties' joint request that its decision be certified for interlocutory appeal. 28 U.S.C. § 1292(b) (2006). This appeal followed.

Our review on a grant of summary judgment is de novo. Pineda v. Toomey, 533 F.3d 50, 53 (1st Cir. 2008) (citation omitted). We

conclude that the known loss doctrine does not apply in this case, although coverage may well be barred or limited on other grounds. Admittedly, SCA Services uses broad language: the SJC there explained that "the basic purpose of insurance is to protect against fortuitous events and not against known certainties" and that "an insurable risk is eliminated in the instance where an insured knows, when it purchases a policy, that there is a substantial probability that it will suffer or has already suffered a loss." SCA Servs., 646 N.E.2d at 397.

Loss in this context surely refers to the loss visited by a judgment (or settlement)--not the loss suffered by the plaintiff. Allmerica Fin. Corp. v. Certain Underwriters at Lloyd's, London, 871 N.E.2d 418, 431 (Mass. 2007) (noting that "Allmerica had knowledge of possible and actual claims . . . but not probable or actual losses"). Liability insurance for the Globe is designed to compensate its loss once the Globe's liability is established. Consonantly, coverage for past acts that have not resulted in liability is permissible if the policy so provides.

A refusal to allow recovery for known loss makes sense where the insured, but not the insurer, already knows before the policy is procured that a loss has occurred or is certain. In SCA Services the policy was obtained after a court had already ordered the town waste disposal site to be closed as a nuisance because the site had contaminated the groundwater and polluted the environment.

646 N.E.2d at 396.   The follow-on damage suit had to establish damages but liability was virtually certain based on the nuisance finding.   Id. at 397-98.

Accordingly, this court read SCA Services as requiring that the insured know "that a specific loss has already happened or is substantially certain to happen."   U.S. Liab. Ins. Co. v. Selman, 70 F.3d 684, 690 (1st Cir. 1995) (emphasis added).   And the SJC thereafter cited Selman's clarifying construction with approval in Allmerica, 871 N.E.2d at 431.   There, the SJC allowed insurance coverage for law suits involving vanishing premium claims even though the insured

> knew when it purchased the excess policy that it faced multiple individual 'vanishing premium' claims, and as part of its policy application disclosed both the specific claims against it and the fact that 'vanishing premium claims' were being litigated against others in the industry.

Id.

This reading makes good sense.   It is hard to see why as a matter of policy the Globe should not be able to obtain insurance for past acts that might lead to liability determinations in due course.   This is especially so where the insurance is for a class of contingent risks that are part of newspaper's ongoing business. Whether the Globe made adequate disclosure under the endorsement is a different issue to which we will return.

Many but not all states follow some variant of the known loss doctrine, using one of several labels, but the standard formulation

-8-

is that "the doctrine usually is applicable only when the insured actually knows [prior to securing the policy] . . . either that the loss has occurred or that one is substantially certain to occur." 43 Am. Jur. 2d Insurance § 479 (2008). The loss here may have been likely, but it was not substantially certain or known by the Globe to be so when the policy was obtained.

Thus the early 1995 articles had been published when the insurance was procured, but no law suit had been filed, let alone actually adjudicated (and the October article had not even been published). Nor, even if a suit were brought, was liability certain. Here, the SJC found that Ayash was a limited purpose public figure in relation to the overdose, Ayash, 822 N.E.2d at 683, which would have required her to make the heightened actual malice showing to recover. New York Times v. Sullivan, 376 U.S. 254, 279-80 (1964).

The known loss doctrine aside, the Globe may well not enjoy coverage for Ayash's law suit. Although seven articles are cited in the Ayash state court complaint, the central inaccuracy appears to be the original March 23 statement that Dr. Ayash countersigned the order and the further arguable inaccuracy--the Globe does not concede this--that its "leader" references may have conveyed the false impression that Dr. Ayash had central clinical responsibility when the overdose was delivered.

The prior acts endorsement has two different coverage conditions that Employers asserts were not met. One is that the Globe not have had, prior to the new policy, "notice or knowledge" of the claim in question or of "circumstances which would give rise to such claim." The second, which Employers also says that the Globe fails to meet, requires lack of "other valid and collectible insurance applicable to such claim." Alternatively, Employers objects to coverage on public policy grounds because the Ayash judgment allegedly resulted from "purposeful disobedience" of a court order.

Employers invites us to affirm the existing judgment on all or any of these grounds, and the Globe invites us to reject them. But the district court did not pass upon them; the district court briefly invoked the endorsement's notice condition but not in detail; nor does the notice condition appear to govern directly the post-policy October article. We do not propose to decide questions that have not been squarely resolved by the district court or fully briefed on this appeal.

The reason why this is so may be of some interest to the parties in deciding whether to pause now and consider whether a settlement is possible. As to articles published before October, Employers' reliance on the first condition of the endorsement is promising; the condition bars insurance not for a known loss but merely where there is notice on the insured's part, not conveyed to

-10-

the insurer, of "circumstances which would give rise to such claim." It is not clear just what answer the Globe has to this condition.

Still, the October 31 article occurred after the policy went into effect and its relationship to the earlier articles is complicated. Part of the October article connects to earlier allegations but part was the basis for a separate invasion of privacy count in Ayash's state court complaint. While the Superior Court dismissed that count prior to the sanctions order, Ayash v. Dana-Farber Cancer Inst., No. Civ. A. 96-0565-E, 1997 WL 438769 (Mass. Super. July 9, 1997), conceivably it generated some coverage, at least as to defense costs.

On top of these primary concerns, Employers has other coverage objections, one of which (the second condition) may raise factual and legal issues, while the Globe offers alternative arguments based on policy language which, whether or not promising, further complicate analysis. Finally, Massachusetts has case law directed to the situation in which damage awards may encompass both covered and uncovered claims. Liquor Liab. Joint Underwriting Ass'n of Mass. v. Hermitage Ins. Co., 644 N.E.2d 964, 969 (Mass. 1995).

So each side faces some risks and the outcome of litigation might not be an all-or-nothing victory. The Globe has to face some uncomfortable facts; the insurer, Massachusetts law that often favors the insured. With able law firms on both sides, the costs

of more litigation, including future appeals and even future remands, will doubtless be weighed by clients.  This case is not about principle but about money.  We need not say more.

The judgment of the district court, denying coverage based on the known loss doctrine, is <u>vacated</u> and the matter <u>remanded</u> for further proceedings not inconsistent with this decision.  Each side will bear its own costs on this appeal.

<u>It is so ordered</u>.