MURDOCK, Justice
(concurring specially).
I concur in the disposition by the main opinion of the issues addressed therein. I write separately to further explain my reasons for doing so and to comment on the context in which the issues addressed in the main opinion arise.

Preliminary Observations

Before explaining my agreement with the disposition by the main opinion of the issues addressed therein, I believe it important to note certain aspects of the context in which these issues are presented in this case. First, the formulation and implementation of a risk-management policy was something the national fraternity, Kappa Sigma, asked of the officers of local chapters in their capacity as agents of the national fraternity. Gabriel Dean and Charles Baber, in their capacities as president and vice president, respectively, of the local chapter, therefore, may have assumed a responsibility to the national fraternity to promulgate such a policy in order to aid the national fraternity in fulfilling the duties imposed by law upon it in relation to visitors to the fraternity house. We do not appear to be presented in this appeal with the question whether *1000 Dean and Baber, in their individual capacities, owed a personal duty to Ryan Price-Williams to promulgate and implement a risk-management policy. Obviously, they owed a personal duty to Price-Williams not to assault and batter him. A duty specifically to create and implement a risk-management policy for his benefit is a different issue, however. See generally Restatement (Third) of Agency: Duty to Principal; Duty to Third Party § 7.02 (2006) (“An agent’s breach of a duty owed to the principal is not an independent basis for the agent’s tort liability to a third party. An agent is subject to tort liability to a third party harmed by the agent’s conduct only when the agent’s conduct breaches a duty that the agent owes to the third party.”); cf. Commercial Union Ins. Co. v. DeShazo 845 So.2d 766, 770 (Ala.2002) (“Furthermore, the ‘inspection and audit’ clauses also indicate that any inspection was solely for the benefit of the defendants, and not, as described in the clauses, made ‘on behalf of or for the benefit of the named insured or others.’ ” (emphasis omitted)).
Second, the Court decides this case today on the basis of an “exclusionary clause” applicable to injuries resulting from an assault and battery. It may be noted as well that the “coverage” language in the policy applies in the first place only to “occurrences” or, as that term is defined, “accidents.” “[A] CGL policy is intended ‘ “to protect an insured from bearing financial responsibility for unexpected and accidental damage to people or property....”’” Town & Country Prop., L.L.C. v. Amerisure Ins. Co., 111 So.3d 699, 707 (Ala.2011) (quoting Essex Ins. Co. v. Holder, 372 Ark. 535, 539, 261 S.W.3d 456, 459 (2007), quoting in turn Nabholz Constr. Corp. v. St. Paul Fire & Marine Ins. Co., 354 F.Supp.2d 917, 923 (E.D.Ark.2005)). From the standpoint of the insureds, Dean and Baber (in whose shoes Price-Williams must stand in pursuing his direct-action claim against their insurer to recover the damages he has been awarded against them personally), the “damage” to Price-Williams was anything but “unexpected and accidental.” Dean and Baber intentionally, physically attacked and “battered” the victim, Price-Williams.
The result achieved in this case thus is in accord not only with the public policy in Alabama and elsewhere against indemnifying an insured for a loss resulting from his or her own intentional wrongdoing, but also with the fact that an “assault and battery” is an intentional act and therefore cannot properly be considered an “accident” within the meaning of liability policies:
“Insurance liability policies traditionally have been construed as not providing coverage for assaults and batteries committed by the insured, due to the public policy against indemnifying one for his or her own wrongdoing. Moreover, ‘occurrence’- or ‘accident’-based policies often have been interpreted to not encompass claims arising from assaults and batteries.”
Kimberly J. Winbush, Annotation, Validity, Construction and Effect of Assault and Battenj Exclusion in Liability Insurance Policy at Issue, 44 A.L.R.5th 91 (1996).[11]

Issues Addressed in the Main Opinion

As to the issues addressed in the main opinion, the outcome in this case is governed by two facts. First, the plaintiff has a single, nonseverable claim. As the main opinion notes, Price-Williams’s claim is for *1001 bodily injury that cannot be divided and allocated between Dean’s and Baber’s alleged negligence in not promulgating and implementing a risk-management policy and their subsequent act of intentionally assaulting and battering Price-Williams. Nor can it be divided between those blows struck by Michael Howard and those struck by Dean and Baber during the assault. Price-Williams’s single, nonsevera-ble claim is either covered — in its entirety — by the Admiral insurance policy, or it is not. Second, regardless of whatever other acts or omissions by Dean and Baber or by a third party (i.e., Howard) may have facilitated or contributed to Price-Williams’s bodily injury, it is undeniable that this indivisible bodily injury did arise out of an assault and battery committed by Dean and Baber.
To be applied to these two facts is the following simple policy language: “This insurance does not apply to ‘bodily injury,’ ... [or] ‘personal injury’ ... arising out of any act of assault and/or battery by any insured or additional insured.” Courts in other states that have addressed the issue are essentially unanimous in understanding assault-and-battery exclusions to bar coverage when a loss arises from an assault and battery, regardless of whether there are other acts or “causes of action” that have contributed to that loss.[12] Even more specifically, most of these cases stand for the proposition that liability-policy clauses that exclude losses arising from an assault and battery are effective to bar payments for any such loss, even when the only improper conduct of the insured is a purely negligent act or omission that simply made possible or facilitated the subsequent intentional assault or battery. A fortiori, this basic understanding applies in *1002 a case such as this in which it is the insured himself who commits the subsequent intentional assault and battery.
Admiral relies on such cases as Auto-Owners Insurance Co. v. American Central Insurance Co., 739 So.2d 1078 (Ala.1999), Horace Mann Insurance Co. v. D.A.C., 710 So.2d 1274 (Ala.Civ.App.1998), and Gregory v. Western World Insurance Co., 481 So.2d 878 (Ala.1985). Price-Williams argues that these cases are distinguishable because, he says,, they involve separate “claims” arising out of the same “act,” whereas in this case it is possible to distinguish between Price-Williams’s claim alleging an intentional assault and his claims alleging negligence because the claims are based on two separate and distinct acts. This argument misunderstands the rationale of Auto-Owners.
First, it appears that there were in fact two different acts by the insured in Auto-Owners. As the trial court in Auto-Owners found: “While the claims in the underlying case involve both intentional and unintentional acts, the defendant has provided case law supporting the nonsevera-bility of the claims.’ ” Id. at 1080 (emphasis added). The trial court did not say that the case involved alternative legal theories or causes of action in relation to the same act; it said that the complaint alleged “both intentional acts and unintentional acts.” The claims against the insured in Auto-Owners involved allegations that he allowed other fraternity members to commit intentional acts and that he himself committed such acts. This Court acknowledged that separate acts were involved:
“We also agree with the trial court that although the claims in the underlying action alleged both intentional and unintentional acts, those claims were not severable so as to obligate American Central to provide a defense and indemnity as to some claims but not as to others.”
Auto-Owners, 739 So.2d at 1082 (emphasis added).[13]
That said, however, the underlying reason the claims in Auto-Owners were not severable is exactly the same as in the present case: there was only one set of indivisible injuries suffered by the victim of an assault. Those injuries cannot be severed and allocated to different causes, whether those “causes” are separate legal theories or “claims” relating to the same act or are actually separate acts that combined to cause the injuries. This simple fact was true in Auto-Owners, just as it is true in this case and in dozens of indistinguishable cases throughout the country.
Price-Williams also seeks to distinguish Gregory, invoking the fact that a third party, Howard, also landed some blows to Price-Williams during the assault. Price-Williams argues that the exclusion provision at issue applies only to injuries arising out of any act of assault and battery “by any insured or additional insured” and that Howard is not an “insured or additional insured.”
This attempt to distinguish Gregory ignores basic principles of tort law regarding joint and several liability of multiple tort-feasors contributing to a single, indivisible injury. If the separate acts of two or more tortfeasors combine to cause an indi *1003 visible injury, then all actors are jointly and severally liable for that entire injury. See Breland v. Rich, 69 So.3d 803, 825 (Ala.2011) (observing that ‘“where separate causes act contemporaneously to produce a given result, the causes of injury are concurrent within the rule making separate wrongdoers equally hable for the resultant injury1 ” (quoting Davison v. Mobile Infirmary, 456 So.2d 14, 26 (Ala.1984))); Franklin v. City of Athens, 938 So.2d 950, 953 (Ala.Civ.App.2005) (stating that “[t]he negligence of two or more tort-feasors may combine to result in a single, indivisible injury for which both tortfea-sors are liable”); and Holcim (US), Inc. v. Ohio Cas. Ins. Co., 38 So.3d 722, 729 (Ala.2009) (explaining that “[ujnder Alabama law governing joint and several liability, ‘[a] tort-feasor whose negligent act or acts proximately contribute in causing an injury may be held liable for the entire resulting loss’ ” (quoting Nelson Bros., Inc. v. Busby, 513 So.2d 1015, 1017 (Ala.1987) (emphasis omitted))).
In other words, it is the indivisible nature of an injury that is the focus of tort law in deciding that more than one actor or act is to be deemed responsible for a given loss. And it is this single, indivisible nature of the bodily injury in this case that is dispositive. Aside from whatever other combining cause may have been involved, the undeniable fact remains that the individual insureds assaulted and battered the victim. As the main opinion aptly notes, if portions of the resulting injury and related hospital bills could be attributed solely to the earlier negligent actions of Dean and Baber in not promulgating a risk-management policy or to the acts of Howard during the actual attack on Price-Williams (the latter being alleged by Price-Williams to have been made possible by the prior negligent actions of Dean and Baber), we would have a different ease. We do not have that case.
In Board of Education of East Syracuse-Minoa Central School District v. Continental Insurance Co., 198 A.D.2d 816, 604 N.Y.S.2d 399 (1993), the court applied policy language limiting “coverage” to “accidents” as well as an exclusion for bodily injury occurring during the course of the injured party’s employment. In that case, very much as in this one, the insured pinned its hopes for coverage upon certain wrongdoing on its part that, standing alone, might provide a basis for coverage. Those arguments were rejected with sound reasoning apparently embraced by this Court in Auto-Owners:
“The allegations against the School District ... do not constitute an ‘occurrence’ within the meaning of its general liability policy. An ‘occurrence’ is defined in the policy as an ‘accident.... ’ There is nothing accidental about the charges contained in the complaint [citations omitted]. Sexual harassment, like sexual abuse and child abuse, is intentional in nature [citations omitted]. While the complaint contains allegations that ‘the District knew or should have known of the complained of conduct’ and ‘failed to stop or prevent such conduct,’ those allegations do not change the gravamen of the complaint from one alleging intentional acts and violations of Federal and State statutes to one involving negligent conduct (see, e.g., New York Cas. Ins. Co. v. Ward, 139 A.D.2d 922, 527 N.Y.S.2d 913 [ (1988) ]).”
198 A.D.2d at 817, 604 N.Y.S.2d at 400.
Likewise in this case, the argument that Dean and Baber committed acts separate from the assault and battery that directly injured Price-Williams and that by those previous acts of negligence they “failed to stop or prevent” their own intentional assault and battery of the victim or the participation of a third party in that subsequent assault and battery must fail. In *1004 this regard, I find helpful the following explanation of Texas law, which I submit is no different than the law of Alabama and basically every other state:
“Texas courts ... when determining whether an exclusion in an insurance contract applies, examine the factual allegations showing the origin of the damage[] rather than the legal theories asserted by the plaintiff. Duncanville Diagnostic Ctr., Inc. v. Atlantic Lloyds Ins. Co. of Tex., 875 S.W.2d 788, 789 (Tex.App.-Eastland 1994, writ denied); ... Burlington Ins. Co. v. Mexican American Unity Council, Inc., 905 S.W.2d 359, 360 (Tex.App.-San Antonio 1995, no writ) (same). Where the legal claims asseried by the plaintiffs are not independent and mutually exclusive, but rather related to and dependant upon excluded conduct, the claims are not covered, even if asserted against an insured who did not himself engage in the prohibited conduct. Burlington Ins. Co., 905 S.W.2d at 362.”
Canutillo Indep. Sch. Dist. v. National Union Fire Ins. Co. of Pittsburgh, Pa., 99 F.3d 695, 703-04 (5th Cir.1996) (emphasis added).
The same is true here. The “legal claims asserted are not independent ..., but [are] related to and dependent upon excluded conduct,” i.e., the assault and battery. The only difference between this case and the Texas case quoted above (and most other cases addressing this issue) is that the exclusion is deemed to apply in the other cases to bar a claim against a negligent insured even though the actual assault and battery was not committed by that insured. Here, the actual assault and battery was committed by the same insureds who seek recovery.

. The policy at issue also contains an exclusion for " 'bodily injury' or 'property damage' expected or intended from the standpoint of the insured,” which would appear to be sufficient in and of itself to require a judgment in Admiral’s favor.

. The above-cited annotation further explains that, notwithstanding the above-noted principles regarding the construction of "coverage" clauses,
"many liability insurance contracts, particularly those issued to bars, restaurants, and similar establishments include specific assault and battery exclusions, aimed at precluding coverage of damages caused by these types of torts. These exclusions have spawned a wide variety of challenges, both to their validity and to their applicability to particular conduct and individuals. For example, in Liquor Liability Joint Underwriting Ass'n v. Hermitage Ins. Co. (1995) 419 Mass. 316, 644 N.E.2d 964, 44 A.L.R.5th 787, the court declared that an assault victim’s claims of negligence against the insured bar ... did not fall within an assault and battery exclusion in that tavern’s insurance policy. However, most other courts have disagreed, finding that all claims, whether rooted in the actual assault and battery, or couched in negligence language, that arise from an assault and battery fall within the parameters of an assault and battery exclusion."
Winbush, 44 A.L.R.5th 91. The annotation includes a cumulative supplement listing 44 cases from 16 different jurisdictions it describes as holding “either implicitly or explicitly ... that assault and battery exclusions encompassed claims alleging that the insured’s negligence caused the damages in litigation.”
In contrast, the annotation lists a total of eight cases it introduces with the following statement: "Assault and battery exclusions in the following cases were ruled to not relieve insurance companies from their duties to defend or indemnify insureds for claims arising from their assault-and-battery-related negligence.” Of these eight cases, however, all but two are cases from jurisdictions listed in the previous section that lists for those jurisdictions more recent cases embracing the majority rule or that are distinguishable. The remaining two include the one case cited in the quoted passage above, Liquor Liability Joint Underwriting Ass’n of Massachusetts v. Hermitage Insurance Co., 419 Mass. 316, 644 N.E.2d 964 (1995), and Mount Vernon Fire Insurance Co. v. Creative Housing Ltd., 70 F.3d 720 (2d Cir.1995). The former is probably distinguishable based on the court’s interpretation of the clause at issue; the latter applies the law of the State of New York, a state that also has produced cases embracing the majority rule.

. Moreover, each of the cases cited in Auto-Owners in support of the conclusion that the claims there were nonseverable involved claims of negligent supervision or other non-intentional acts by an employer and separate intentional acts by an employee. See id., citing Commercial Union Ins. Cos. v. Sky, Inc., 810 F.Supp. 249, 255 (W.D.Ark.1992); Old Republic Ins. Co. v. Comprehensive Health Care Assocs., 786 F.Supp. 629 (N.D.Tex.1992); and Board of Educ. v. Continental Ins. Co., 198 A.D.2d 816, 604 N.Y.S.2d 399 (1993).