**SOUTHEASTERN FIRE INSURANCE CO., a corporation, Plaintiff,**

v.

**Harvey E. HELTON, Sue Reynolds, Mary Frances Singleton and Gertie Lee Helton, Defendants.**

Civ. A. No. 2184.

United States District Court
S. D. Alabama, N. D.

March 14, 1961.

---

* Now 8 U.S.C.A. § 1439.

Thomas B. Hill, Jr., of Hill, Hill, Stovall & Carter, Montgomery, Ala., for plaintiff.

McLean Pitts, T. G. Gayle, Sam Earl Esco, Jr., Selma, Ala., A. W. Jones, of Pritchard, McCall & Jones, Birmingham, Ala., for defendants.

DANIEL HOLCOMBE THOMAS, District Judge.

Plaintiff herein filed this suit for declaratory judgment under Title 28 U.S. C.A. § 2201, praying that it be held free from any liability under the terms of the insurance policy issued by it to Harvey E. Helton, one of the defendants herein.

On July 29, 1958, Harvey E. Helton, the insured, was driving his 1955 Ford automobile on Alabama Highway 22 near the point where the highway intersects with Bogue Chitto in Dallas County, Alabama. Riding in the vehicle with Helton were three guests. When the automobile approached the bridge spanning the Bogue Chitto, it crashed into the railing on the right side of the road. As a result, all the occupants suffered injuries. Subsequent to the accident, the three guests filed suits against Harvey E. Helton in the Circuit Court of Dallas County, Alabama, seeking to recover damages from him for the personal injuries they sustained in the accident. Helton advised his insurance company, Southeastern Fire Insurance Company, a corporation existing under the laws of the State of South Carolina, of the pending law suits; and that company, pursuant to the policy agreement, came forward to defend the suits. Shortly after the insurance company came into the cases, a non-waiver agreement was entered into between the company and Helton; and the attorneys representing the company withdrew from the cases. The cases went to trial before juries in the state

circuit court and each of the three guests obtained a verdict and judgment against Helton. Southeastern took the position that the provisions of the policy of insurance had been violated by Helton, and refused to honor the policy until the question of its liability had been determined.

In support of its position, the plaintiff alleges that Helton intentionally drove his automobile into the bridge railing and thereby injured the three passengers, in violation of the policy terms and in violation of the public policy of the State of Alabama. Plaintiff further alleges that the terms of the insurance policy were violated because Helton turned over the policy to the three guests injured in the accident.

The defendants denied the allegations of the plaintiff and filed counter-claims, alleging that the insurance company acted negligently and in bad faith in handling the cases, and that as a result the insurance company should be found liable, not only for the amount of coverage specified in the policy, but also for the amount of judgment awarded in excess of the policy limitations.

The primary issue to be determined in this case is one of fact, that is, were the bodily injuries to his passengers caused intentionally by the insured. Other issues presented are (1) did Helton, in violation of the terms of the insurance policy, refuse or fail to cooperate with the insurance company; and (2) did the insurer act negligently or in bad faith in its actions with regard to the method it chose to handle the cases tried in the Dallas County Circuit Court.

The facts giving rise to this litigation are as follows:

On the afternoon of July 29, 1958, Helton was driving his 1955 Ford automobile from Mobile, Alabama, to Selma, Alabama. Riding in the automobile with Helton as his guests were Sue Reynolds, Mary Frances Singleton, and Helton's estranged wife, Gertie Lee Helton. During the trip, Helton had been drinking beer but had not been drinking excessively. Throughout the trip, from time to time, he had been driving the vehicle at speeds exceeding eighty m. p. h., and he and his wife had been arguing. The passengers testified that Helton had attempted to frighten them at different times during the course of the trip by driving in a reckless manner.

When the automobile was several hundred feet from the bridge which spans the Bogue Chitto in Dallas County on Alabama Highway 22, Helton told the passengers that he was going to hit the bridge and kill every one of them. At this moment he was driving at a very high rate of speed. He turned the vehicle in the direction of the bridge railing and headed toward it. The women began to scream; one of them reached over from the rear seat in an effort to grab the steering wheel but was pushed back by Helton. At about that moment, the front-center of the automobile struck the bridge railing at a speed of approximately eighty m. p. h. Miraculously, none of the occupants was killed, although all of them suffered injuries.

After the women had been given emergency treatment and had been admitted to the hospital in Selma, they were interviewed by a highway patrol officer. This officer testified that they all told him that Helton had meant to hit the bridge. Helton testified that he does not remember anything about the accident; that the last he remembers they were some distance from the bridge, and he did not regain his memory until some two weeks later in the hospital. He did suffer a severe concussion in this accident. One of the women passengers testified that she thought Helton was joking, and that he had made an effort to cut away from the bridge. While none of the women denied making the statement to the highway patrol officer, they each testified that Helton had been driving recklessly all the way from Mobile and had been trying to frighten them and they were not sure whether Helton meant to hit the bridge or not. They further testified that he appeared neither mad nor violent at the time he made the statement that he was going to hit the bridge and kill them all.

Following the accident, Helton was arrested and charged with assault with intent to murder, obviously on the strength of the statements made by the passengers while they were in the hospital, but he was never indicted on the charge.

Some unknown party collected the scattered possessions of the occupants of the vehicle at the scene of the accident and placed them in the hospital room of one of the women. Among these articles was the policy of insurance issued by the plaintiff to Helton. This policy was turned over to the attorneys for the passengers.

Subsequently, the three women filed suit against Helton in the Circuit Court of Dallas County, Alabama, alleging that they were willfully and wantonly injured by the defendant and praying for damages. A newspaper article appeared in the local newspaper stating that the suits had been filed. The article mentioned the fact that the defendant Helton had a policy of insurance with the plaintiff company, and further stated the amount of coverage of the policy. Helton advised the plaintiff of the pending suits, and it provided counsel to represent him according to the terms of the policy. After the attorneys for the plaintiff appeared in the cases, they deemed it advisable to withdraw and proceed under a non-waiver agreement. This course was chosen because the attorneys were of the opinion that there was a conflict of interests between the insured and the insurer in that if the accident was in fact deliberate and intentional, there would be no liability under the policy. The defense of the cases was entrusted to Helton's own personal attorney and the expense of said defense was borne by the plaintiff herein.

During the course of the litigation in the state court and prior to the actual trial of any of the cases, an offer of settlement within the limits of the policy was made by the three women. The maximum liability coverage under the policy was $20,000. The offer to settle all three of the pending cases was in the amount of $18,000. Helton and his attorney wrote the attorneys for the plaintiff herein and demanded that the cases be settled within the policy limits; however, the plaintiff re-asserted its position that it was of the opinion there was no liability coverage on the claims, and the cases were not settled. The cases went to trial and verdicts and judgments were rendered against Helton totaling $35,800,[1] an excess of $15,800 beyond the limits of the policy.

The policy of insurance which is the subject of this suit obligated the plaintiff "to pay on behalf of the insured, all sums which the insured shall become legally obligated to pay as damages because of: (A) Bodily injuries, sickness or disease * * *; (B) Injury to or destruction of property * * *" The policy further provides: "This policy does not apply * * * to bodily injury or property damage caused intentionally by or at the direction of the insured * * *" The policy also contains the standard provisions that the insured is to cooperate with the insurer in the handling of any claims under the policy and that the insurer is to defend any suits alleging damages which are payable under the terms of the policy. The premiums on the policy were paid in full by the insured and there is no question but that the policy was in full force and effect at the time of the accident.

The law applicable to these facts is well established and not seriously in dispute by the litigants. The inference to be drawn from the presented facts is disputed. It is established in Alabama that an "intentional" provision in an insurance contract is valid.[2] It is equally clear that the rights of the insured inure to the injured claimants; that is to say, claimants derive their rights from the insured and if he has in

1. The judgments were as follows: Sue Reynolds, $15,000; Mary Frances Singleton, $3,800; Gertie Lee Helton, $17,000.

2. National Life & Accident Ins. Co. v. Hannon, 1926, 214 Ala. 663, 108 So. 575.

some way violated the terms of his insurance contract, the claimants cannot recover from the insurer.[3] The plaintiff strenuously contends that Helton's action cannot possibly be construed in any other light than that Helton deliberately and intentionally drove the car into the bridge and injured the occupants. It is insisted that this is the only inference that could be drawn from the facts.

The Court has carefully reviewed the evidence presented in the trial of this case in an endeavor to determine whether or not the accident occurred in such fashion as to come under the exclusion of "intentional." It is no simple task to determine intent. One must examine the circumstances surrounding the act charged as intentional, as well as the act itself, in order to reach a conclusion.

■ The plaintiff argues that the intent is obvious from the fact that the insured stated he was going to hit the bridge and he did hit it. Admittedly, these are facts which should be considered in ascertaining intent; however, these facts should be considered in light of the complete evidence. Here, Helton had been driving at an excessive rate of speed and in a reckless manner up until the trip terminated in the collision. He had been drinking and arguing with his wife; on previous occasions during the trip he had attempted to frighten the occupants with reckless actions. There can be no doubt but that Helton's actions constituted negligence in the very highest degree; but I am not convinced from the evidence that Helton actually intended hitting the bridge and injuring the occupants of his automobile. When Helton announced that he was going to do so, I think that his intent was to frighten the women, not to harm them. Unfortunately for himself and the three passengers, he did collide with the bridge. Helton bore no malice toward the passengers, unless it was toward his wife, and it is difficult to believe that he would intend taking the lives of himself and the two other women in order to take the life of his wife. However, since Helton does not remember anything about the happenings immediately preceding the accident, any attempt to determine what prevented his turning back onto the road, leads only to speculation and conjecture. After considering all the evidence and the lack of evidence as to adequate motive, I find as a matter of fact that Helton did not intentionally drive his automobile into the bridge railing in violation of the contract of insurance.

■ Liability insurance policies are purchased for the protection of the insured; but by their very nature they likewise protect members of the public; and the latter purpose cannot be defeated by broad interpretations of exclusions written in these policies. The exclusion relied on by the plaintiff-insurer in this policy relates to coverage for "bodily injury or property damage caused intentionally by or at the direction of the insured." While I am mindful of the fact that an "intentional" provision in an insurance contract is valid in Alabama (Footnote 2, supra), just what this provision means is the real issue here. In a broad sense, "caused intentionally" would cover all bodily injury "willfully" or "wantonly" inflicted. This is certainly not what is meant by "intentionally" as used in this policy. To illustrate, the courts in Alabama have defined "willful injury" as an injury that was "intentionally and designedly" done.[4] And as was stated in the case of Wunderlich v. Franklin, 5 Cir., 1938, 100 F.2d 164, at page 167, "In defining wanton negligence, the Alabama courts emphasize the necessity that the lack of care and disregard of probable consequences be so great that, in its ethical aspects at least, it be analogous to a will or intention to produce the result." Certainly, it could not be argued that the exclusion would cover

3. Employers Ins. Co. of Alabama v. Johnston, 1939, 238 Ala. 26, 189 So. 58; McDowell et al. v. United States Fidelity & Guaranty Co. et al., 1954, 260 Ala. 412, 71 So.2d 64; Royal Indemnity Co. v. Watson, 5 Cir., 1932, 61 F.2d 614.

4. Adler v. Martin, 1912, 179 Ala. 97, 59 So. 597.

a verdict brought under the average willful or wanton negligence count.

I do not think it is a question here of whether Helton intended to run into the bridge. It must go further than that. I think it is a question of whether or not Helton intended to commit the equivalent of an assault and battery on the defendants. The plaintiff has cited in one of its briefs the case of Pennsylvania Threshermen & Farmers' Mutual Casualty Ins. Co. v. Thornton, 4 Cir., 1957, 244 F.2d 823, 827. My interpretation of this case is exactly the opposite of the interpretation given it by the plaintiff. It is stated in that case: "Because of such expressions ['recklessness is the equivalent of * * * intentional wrong'] the proposition is advanced by the appellant that we should treat this case like one where the driver of an automobile deliberately inflicts injury upon a person, that is to say, we should regard the case as an assault and battery and not an accident within the meaning of the policy."

It is further stated in the Thornton case, "To allow the appellant's argument would lead to the illogical and indefensible result, contrary to the purpose and spirit of liability insurance policies, which are designed to protect members of the public, that the more extreme the recklessness the more likely the insurer would be to escape liability." I find that Helton was guilty of extreme recklessness but he was not possessed by the intention to injure, which would be required to defeat liability under the exclusion in question. In other words, even though he was guilty of extreme recklessness, such recklessness was not the equivalent of an assault and battery upon the occupants of the car.

I further find that the evidence fails to support the allegation of the plaintiff that the insured violated the provisions of the policy by not cooperating with the company. This allegation is grounded upon the fact that the policy fell into the hands of the claimants, and then into the hands of their attorneys, and was subsequently discussed in the local newspaper. The insured denied giving the policy to anyone, and one of the claimants testified that it was among the possessions placed in her room following the accident. I am of the opinion that this evidence fails to establish that the insured surrendered the policy to the injured parties. While it may be true that his sympathies were with the injured claimants and not with the insurance company, this of itself does not indicate that he failed to give the company his cooperation. Any question of whether the plaintiff here was harmed in the state court trial of the cases by the appearance of the newspaper article discussing the insurance coverage, is not for this Court to decide.

Having found that the insurance contract was not violated by the insured, it follows that the plaintiff is obligated to pay, up to the limits of the contract of insurance, those sums which the insured has become legally obligated to pay as damages as a result of the judgments rendered against him.

 There remains for consideration the important question of whether the plaintiff was negligent or acted in bad faith in failing to settle the claims of the injured parties within the limits of the policy when it had the opportunity to do so. In the case of Waters v. American Cas. Co. of Reading, Pa., 1953, 261 Ala. 252, 73 So.2d 524, the Supreme Court of Alabama adopted the rule that a liability insurer may be liable to the insured for any judgment in excess of the policy limits if the insurer, acting negligently or in bad faith, rejects an offer to settle within the limits of the insurance policy.[5] It is undisputed that the plaintiff refused to settle the claims within the limits of the policy unless such settlement was conditioned upon the judicial determination of the plaintiff's liability coverage on the policy; consequently, if this refusal was

5. See also Hall v. Preferred Acc. Ins. Co. of New York, 5 Cir., 1953, 204 F.2d 844, 40 A.L.R.2d 162, and the cases cited therein.

made either negligently or in bad faith, the company is liable for the amount of judgment in excess of the policy limits.

 The mere fact that an insurance company refuses to make a settlement within the limits of its insurance contract is not of itself evidence of negligence or bad faith. Waters v. American Cas. Co. of Reading, Pa., supra. The Waters case goes on to state that it is a question for the jury to determine whether or not the failure to settle constitutes negligence or bad faith; therefore, the issue is one of fact, and it devolves upon the Court to determine, from all the facts and circumstances, whether or not the plaintiff acted negligently or in bad faith.

Here, the insurer's attorneys, pursuant to the provisions of the policy, initially undertook the defense of the cases filed against Helton in the state court. After an investigation, which consisted of talking to witnesses and the taking of depositions, the insurer's attorneys arrived at the opinion that a genuine question of liability coverage under the terms of the policy existed. This question was whether or not the bodily injuries were intentionally inflicted. Thereupon, the insurer, under a non-waiver agreement, withdrew from the cases and entrusted their defense to the insured's personal attorney. This attorney capably and diligently defended the cases and was compensated by the insurer for said defense. Subsequent to the withdrawal of the insurer from the cases and prior to the time they were tried, an offer of settlement within the limits of the policy was submitted to the insurer. The insurer, in the honest belief that a serious question of its liability was present, agreed to the settlement, subject to a judicial determination of the issue of liability coverage. The Court finds that these actions of the insurer, plaintiff here, were done in good faith and that the plaintiff is guilty of no negligence in the manner in which it chose to handle the cases.

From the foregoing, it follows that the plaintiff is liable only for the full amount of coverage under the insurance contract issued by it to the insured. The company is not liable for any amount in excess of the limits of the policy. Under Title 28, section 12, Code of Alabama, Recompiled, 1958, the claimants, Sue Reynolds, Mary Frances Singleton, and Gertie Lee Helton, are entitled to have the amount of insurance money owed by the plaintiff company applied pro tanto to the payment of their respective judgments obtained in the Circuit Court of Dallas County, Alabama. The full amount of coverage under the policy was $20,000; therefore the respective claimants are entitled to recover of this amount as follows: Gertie Lee Helton, 47% or $9,400; Sue Reynolds, 42% or $8,400; Mary Frances Singleton, 11% or $2,200, together with interest on said amounts at the rate of 6% per annum from April 15, 1959. Harvey E. Helton takes nothing by his counterclaim.

Judgment will be entered in accordance herewith.