Appeal by defendant Bobby Gregory from a summary judgment in favor of the plaintiff, Western World Insurance Company, Inc. (Western World), in plaintiff's action for a declaratory judgment. We affirm.
On August 30, 1982, Western World issued a policy of liability insurance to William E. Danley, Jr., and Glenn E. Kirk, d/b/a Big Daddy's Lounge. The policy was amended September 1, 1982, by the following endorsement:
"ASSAULT AND BATTERY EXCLUSION:
 "It is agreed that the insurance does not apply to bodily injury or property damage arising out of assault and battery or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of the insured, his employees, patrons or any other person."
On March 18, 1983, Gregory filed an action against Big Daddy's Lounge and others. His amended complaint contained five counts.
In Count One, he alleged that while he was at Big Daddy's Lounge, one of the co-defendants, Jerry Raines, "committed an assault and battery on the Plaintiff."
In Count Two, plaintiff alleged that assault and also alleged that other co-defendants, *Page 879 
Sandra Dowdy and Glenn Kirk, as agents and employees of Glenn Kirk and William Danley, Jr., at the time of the assault and battery, "negligently and wantonly maintained the premises known as Big Daddy's Lounge, so that it was not reasonably safe for members of the public" and that "as a proximate consequence of said wantonness or negligence, Plaintiff was caused to suffer the injuries heretofore described."
In Count Three, plaintiff realleged the facts of his earlier counts and also charged that the co-defendants, "Sandra Dowdy and Glenn Kirk, while employed as agents and employees of Glenn Kirk and William Danley, Jr., . . . did sell, give, or otherwise dispose of to the Defendant Jerry Raines, contrary to the provisions of law, liquors or beverages, that caused the intoxication of Jerry Raines. As a consequence thereof, the Plaintiff was caused to suffer the injuries heretofore described."
In Count Four, plaintiff alleged that certain fictitious parties "A through HH, as set out in the caption of the Complaint, negligently and wantonly maintained the premises known as Big Daddy's Lounge, so that it was not reasonably safe for members of the public, including the plaintiff," and that "[a]s a proximate consequence of said wantonness or negligence, Plaintiff was caused to suffer injuries heretofore described."
In Count Five, plaintiff adopted the allegations of Count Three, and added:
 "Plaintiff further avers that the fictitious Defendants, A through HH, as set out in the caption of the Complaint, did sell, give or otherwise dispose of to the Defendant Jerry Raines, contrary to the provisions of law, liquors or beverages, that caused the intoxication of Jerry Raines. As a consequence thereof, the Plaintiff was caused to suffer the injuries heretofore described. . . ."
Thereafter, Western World filed its action for a declaratory judgment, seeking a determination that its policy afforded no coverage to the insureds, or any obligation to defend the insureds in the aforementioned lawsuit. A copy of the insurance policy was attached to Western World's complaint. To this complaint, Bobby Gregory filed his answer, asserting certain defenses and praying that the trial court decree that coverage existed. Following a course of pleading, Western World moved for summary judgment based on the pleadings, the terms of the insurance policy, and an affidavit of Richard Parker, an independent insurance agent employed by the insurance agency which sold the policy to Danley and Kirk. This affidavit recited Danley's knowledge of the assault and battery exclusion. A stipulation of facts was also admitted, which stated in part:
 "1. That Western World Insurance Company, Inc. (hereinafter `insurer') issued a policy of insurance to William E. Danley, Jr., Glenn E. Kirk dba: Big Daddy's Lounge (hereinafter `insureds') which was in full force and effect on January 20, 1983 and which said policy of insurance including endorsements is attached hereto as Exhibit `A.'
 "2. The policy of insurance was originally sold by Richard Parker of Darby-Hicks Insurance Agency in Florence, Alabama to insureds and said policy along with endorsements were drafted and issued by insurer to insureds.
 "3. The insureds operated a liquor establishment in Colbert County, Alabama licensed by the State of Alabama Alcoholic Beverage Control Board to serve on premise alcoholic beverages on January 20, 1983.
 "4. Rule 20-X-6-.02 [regarding] on premise licensees, of the Rules and Regulations adopted September 27, 1982 by the Alabama Alcoholic Beverage Control Board were in full force and effect on January 20, 1983. A copy of Rule 20-X-6-.02 is attached as Exhibit `B.'
 "5. On January 20, 1983 Bobby Gregory was a business invitee on the premises of the insureds.
 "6. On January 20, 1983 Jerry Raines was a business invitee on the premises of the insureds. *Page 880 
 "7. On January 20, 1983 alcoholic beverages were served by insureds to Jerry Raines while he was acting in such a manner as to appear to be intoxicated.
 "8. On January 20, 1983 Jerry Raines did strike Bobby Gregory in the face with his fist without provocation by Bobby Gregory while both Jerry Raines and Bobby Gregory were on the premises of the insureds."
Plaintiff's claim against the insured is based upon the Alabama dram shop statute, Code of 1975, § 6-5-71 (a):
 "(a) Every wife, child, parent or other person who shall be injured in person, property or means of support by any intoxicated person or in consequence of the intoxication of any person shall have a right of action against any person who shall, by selling, giving or otherwise disposing of to another, contrary to the provisions of law, any liquors or beverages, cause the intoxication of such person for all damages actually sustained as well as exemplary damages."
Additionally, plaintiff asserts that at the time of the incident in question the Alabama Alcoholic Beverage Control Board had in effect Rule 20-X-6-.02 (4):
 "No on premise licensee may serve a person any alcoholic beverage if such person is acting in such a manner as to appear to be intoxicated."
According to plaintiff, the insureds were acting contrary to law at the time of the incident, and that Western World's coverage for such an incident was provided by its liability policy. Plaintiff, moreover, contends that an ambiguity was created in the policy's terms by the assault and battery endorsement and that it must be resolved in favor of coverage.
The liability policy in question provides the following coverage:
"1. COVERAGE X — LIQUOR LIABILITY
 "The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to which this insurance applies, sustained by any person if such liability is imposed upon the insured by reason of the selling, serving, or giving of any alcoholic beverage at or from the insured premises, and the company shall have the right and duty to defend any suit against the insured seeking such damages, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments and settlements.
"EXCLUSIONS
"This insurance does not apply:
 "(a) to any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;
 "(b) to bodily injury to any employee of the insured arising out of and in the course of his employment by the insured or to any obligation of the insured to indemnify another because of damages arising out of such injury;
 "(c) to injury arising out of any alcoholic beverage sold, served or given while any license therefor, required by law, is suspended or after such license expires, is cancelled or revoked;
 "(d) to bodily injury or property damage, arising out of the named insured's products or reliance upon a representation or warranty made at any time with respect thereto; but this exclusion does not apply to bodily injury or property damage for which the insured or his indemnitee may be held liable if such liability is imposed
 "(1) by or because of the violation of, any statute, ordinance or regulation pertaining to the sale, gift, distribution or use of any alcoholic beverage, or
 "(2) by reason of the selling, serving or giving of any alcoholic beverage to *Page 881 
a minor or to a person under the influence of alcohol or which causes or contributes to the intoxication of any person."
The quoted coverage obviously extends to "dram shop" liability, subject to the stated exclusions. Exclusion (d) itself, excluding liability arising out of products or representation or warranty made with respect to products, specifically does not apply to liability imposed by dram shop law or regulation; consequently no ambiguity exists under Coverage X. To the contrary, the exclusion under (d)(1) and (2) preserves dram shop liability coverage.
Does the addition of the assault and battery exclusion lead to ambiguity in those terms? We think not.
Of course, insurance companies are entitled to have their policy contracts enforced as written, rather than risking their terms either to judicial interpretation or the use of straining language, and the fact that adverse parties contend for different constructions does not mean that the disputed language is ambiguous. Upton v. Mississippi Valley Title Ins.Co., 469 So.2d 548 (Ala. 1985).
The relevant exclusion explicitly states that "the insurance does not apply to bodily injury . . . arising out of assault and battery . . . whether caused by or at the instigation or direction of . . . patrons or any other person."
That is, if the claimed injury arises out of an assault and battery caused by a patron, insurance coverage is excluded. Insofar as this exclusion is concerned, the company could have placed it in the policy with the other quoted exclusions under Coverage X, but it chose instead to place it under a "Combined Provisions Endorsement" along with other exclusions. The insureds themselves selected some of these exclusions and also eliminated some of them. The effect of the assault and battery exclusion, clear in itself, does no more than the other exclusions agreed to by the insured; limiting the company's coverage to those remaining instances of injury arising out of "the selling, serving or giving of any alcoholic beverage at or from the insured premises."
It is not disputed that the bodily injury in question here was injury "arising out of assault and battery." The exclusion, therefore, being applicable, the trial court was correct in granting summary judgment for the plaintiff.
Let the judgment be affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, ALMON and HOUSTON, JJ., concur.