On Application for Rehearing

STUART, Justice.
The opinion of January 11, 2013, is withdrawn, and the following is substituted therefor.
Ryan Price-Williams sued Admiral Insurance Company and Gabriel Dean and Charles Baber in the Mobile Circuit Court pursuant to Aabama’s direct-action statute, § 27-23-2, Aa.Code 1975.[1] Both *992 Dean and Baber were alleged by Price-Williams to be covered under a commercial general-liability insurance policy Admiral had issued the national Kappa Sigma fraternity to which Dean and Baber belonged. Price-Williams alleged that Admiral was obligated to pay a judgment that had been entered in favor of Price-Williams and against Dean and Baber in a previous action (“the underlying action”). Following a bench trial, the trial court entered a judgment in favor of Price-Williams and against Admiral, holding that the Admiral policy provided coverage to Dean and Ba-ber for the negligent and/or wanton acts that formed the basis of the underlying action. We reverse and remand.
I.
On January 31, 2004, Price-Williams was attacked and beaten at a fraternity house maintained by the University of South Alabama chapter of Kappa Sigma in Mobile (the local chapter is hereinafter referred to as “Kappa Nu”; the national fraternity is referred to as “Kappa Sigma”). Price-Williams suffered significant, permanent injuries as a result of the assault and incurred medical expenses of approximately $27,145. On November 28, 2005, Price-Williams sued Kappa Sigma and Kappa Nu and Dean, Baber, and Michael Howard, the three individuals alleged to have committed the assault, in the Mobile Circuit Court.[2] Price-Williams’s complaint sought recovery based on the assault and asserted negligence and/or wantonness claims based on Dean’s and Baber’s failure as officers of Kappa Nu to implement the risk-management program Kappa Sigma required of local chapters, which program, Price-Williams alleged, would have either prevented the assault entirely or, at a minimum, limited its duration and intensity.[3]
Shortly after it received the complaint, Kappa Sigma notified its insurer Admiral of a possible occurrence under its commercial general-liability policy; however, because its policy with Admiral contained a self-insured retention clause, Kappa Sigma took initial responsibility for the defense of Price-Williams’s claims.[4] Kappa Sigma therefore retained its own counsel, which also represented Kappa Nu. However, that counsel did not represent either Dean or Baber, neither of whom made a claim upon Admiral for coverage based upon their status as officers of Kappa Nu. In fact, Dean, Baber, and Howard never re *993 tained counsel, never answered the complaint, and never appeared in the action, and a default judgment was accordingly entered against them. A summary judgment was also entered in favor of Kappa Sigma, and, by the time the jury trial began on November 17, 2008, Kappa Nu was the only remaining defendant.[5]
After closing arguments were made at the conclusion of the trial, Kappa Nu reached a settlement with Price-Williams. Upon notifying the trial court of the settlement agreement, Price-Williams moved the trial court to withdraw his jury demand and to enter a final judgment against Dean, Baber, and Howard based upon the evidence adduced at trial.[6] The trial court granted the motion, dismissed the jury, and thereafter entered a 10-page order containing the following findings of fact and judgment:
“11. As to [Price-Williams’s] second and third causes of action, the court finds that both Dean and Baber, as officers of the local fraternity, had assumed and/or were under a duty to create, implement, supervise, and enforce what was described during trial as the chapter’s ‘risk management program.’ The court further finds, based upon the testimony offered at trial as well as documentary evidence introduced during trial, including the Executive Officers’ Manual ... and the Kappa Sigma Fraternity Risk Management Manual ..., that these defendants both negligently and wantonly breached their individual duties to create, implement, supervise, and enforce a risk management program, and that as a proximate consequence of said breaches, [Price-Williams] was caused to suffer those injuries and damages as proven in this case.
“12. More particularly, the court finds that both Dean and Baber, in accepting their roles as executive officers of the local fraternity, agreed and assumed the duties imposed upon them that are found in the Executive Officers’ Manual and the Kappa Sigma Fraternity Risk Management Manual, which included the implementation and enforcement of a risk management program ....
“18. The evidence introduced at trial established that Dean, the president of the local fraternity, was considered the chief executive officer of the chapter. As president, Dean assumed and carried the ultimate duty both individually and on behalf of the local and national fraternity for the implementation and supervision of the chapter’s risk management program. This means that it was his responsibility, acting within the scope of his duties as president, to take steps toward creating and enforcing a risk management program for the local fraternity at the University of South Alabama. He was responsible for working with the risk management committee chairman on the development of the chapter’s risk management program, and in carrying out the goals of preventing injuries at the chapter house.
“14. Additionally, substantial evidence was introduced that established that Baber, as the vice president, was the second in command at the fraternity house on the night in question. The *994 court finds that his duties included not only the implementation of a risk management program, but also the actual enforcement of the program on the night in question_ [Price-Williams] proved through the evidence at trial that neither of these officers took any steps in carrying out their duties of ensuring that order was maintained at the fraternity house on the evening in question.
“15. To the contrary, the evidence clearly and convincingly established that both Dean and Baber had been drinking this particular night, and that one or both of them knew that an assault was probably going to occur on [Price-Williams] once he walked through the front door of the fraternity house. The fact that no risk management program or education had been implemented only aggravated the situation once the assault began, since neither Dean nor Baber had left any responsible individual in charge of maintaining order at the fraternity house as was required under a reasonable risk management program which, in the court’s opinion, would have minimized and/or prevented the assault from occurring in the first instance....
“16. The Kappa Sigma national fraternity, a former defendant in this action, granted to the local fraternity the authority and right to establish and operate a local fraternity at the University of South Alabama. The evidence at trial clearly established that both Dean and Baber, as the president and vice president of the local fraternity, pursuant to the authority bestowed upon them by the national and local fraternity, assumed the duty to create, implement, supervise, and enforce a risk management program relative to the operation of the local fraternity. These individuals were obligated to act in accordance with these duties which were required to be performed as part of their duties on behalf of the local and national fraternity. The court finds that these two individual defendants, Dean and Baber, both negligently and wantonly breached their individual duties by failing to create, implement, supervise, and enforce an appropriate risk management program as alleged by [Price-Williams] in his complaint. The court further finds' that these two individual’s negligence and wantonness was committed while acting within the scope of these two individual’s duties on behalf of the fraternity.
“Accordingly, the court hereby finds in favor of the plaintiff, Ryan Price-Williams, and against the three individual defendants, jointly and severally, as to the claims raised in [Price-Williams’s] complaint. The court hereby awards to [Price-Williams] and against the individual defendants total compensatory damages in the amount of $500,000. The court further finds that an award of punitive damages is warranted based upon the clear and convincing evidence of wantonness of the individual defendants as to all three claims raised in [Price-Williams’s] complaint, and hereby awards to [Price-Williams] and against the individual defendants punitive damages in the amount of $750,000, which is one and one-half times the amount of compensatory damages to be awarded to [Price-Williams]. The total amount of the verdict is therefore $1,250,000. It is the intention of this Court that this- verdict represents the total damages to be awarded to [Price-Williams] in this case for all damage[] suffered by him as a result of the January 31, 2004, incident, and that the individual defendants are entitled to a setoff of the amount paid to [Price-Williams] by [Kappa Nu] as a result of the confidential pro tanto settlement.”
*995 Subsequently, there was a dispute between Price-Williams and Kappa Nu regarding the settlement agreement and, specifically, whether as part of the settlement Price-Williams had agreed to release only Kappa Sigma and Kappa Nu or, as Kappa Nu maintained, to release Kappa Sigma, Kappa Nu, and Dean and Baber in their capacities as agents of Kappa Nu. Motions were filed by both parties with the trial court, which eventually ruled in favor of Price-Williams. Kappa Nu appealed that judgment to this Court, which affirmed the decision of the trial court, stating:
“At the hearing on the parties’ motions to enforce the settlement agreement held on February 6, 2009, the trial court correctly noted that counsel for [Kappa Nu] did not represent the individual defendants and that counsel therefore had no basis on which to argue on behalf of the individual defendants. The trial court also correctly concluded that a release by Price-Williams of all claims against [Kappa Nu], including all claims based on theories of vicarious liability, would fully protect the chapter from liability — even liability arising from actions of the individual defendants to the extent they are agents of the chapter. In light of the colloquy that took place on November 20, 2008 [when the parties announced that a settlement had been reached], we conclude that the trial court’s interpretation of the settlement agreement was not clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of evidence.”
Kappa Sigma Fraternity v. Price-Williams, 40 So.3d 683, 693 (Ala.2009).
On October 6, 2009, approximately two months before our decision in Kappa Sigma was released, Price-Williams filed the instant action pursuant to § 27-23-2, alleging that, by virtue of their status as officers of Kappa Nu, Dean and Baber were additional insureds under the commercial general-liability insurance policy Kappa Sigma held with Admiral on the date of the assault. Admiral filed a response denying that Dean and Baber were covered under Kappa Sigma’s policy.[7] On May 3, 2011, the trial court conducted a bench trial; however, Admiral did not attend the trial, having been under the mistaken belief that the case would be decided through the submission of briefs.[8] Notwithstanding Admiral’s absence, the trial court proceeded to hear testimony from Baber and to receive exhibits, depositions, and documentary evidence from the parties in attendance.
Admiral and Price-Williams thereafter submitted trial briefs in support of their positions, and, on March 9, 2012, the trial court entered an order stating its findings of fact and conclusions of law and entering a judgment in favor of Price-Williams. In that final judgment, the trial court recognized that an assault-and-battery exclusion in the Admiral policy excluded coverage for any bodily injury resulting from Dean’s and Baber’s assault on Price-Williams but held that the exclusion did not apply to bodily injury caused by Howard’s assault or bodily injury attributable to Dean’s and Baber’s negligence and wantonness in failing to implement a proper risk-management program, which failure, the trial *996 court concluded, “actually facilitated Howard’s conduct of assaulting [Price-Williams].” No postjudgment motions were filed, and, on April 19, 2012, Admiral filed its notice of appeal to this Court.
II.
The trial court in this case considered both oral and written evidence; however, our resolution of the issues on appeal hinges solely on the application of unambiguous language in the Admiral commercial general-liability insurance policy to undisputed facts. Accordingly, the ore tenus rule is inapplicable here, and the trial court’s judgment is afforded no presumption of correctness. Our review, therefore, is de novo. See also McDonald v. U.S. Die Casting & Dev. Co., 585 So.2d 853, 855 (Ala.1991) (“If the terms within a contract are plain and unambiguous, the construction of the contract and its legal effect become questions of law for the court_”).
III.
Admiral argues that the trial court’s judgment should be reversed because, it says, the gravamen of Price-Williams’s claims is that he suffered bodily injury as a result of an assault and battery and Kappa Sigma’s policy with Admiral contains the following exclusion: “This insurance does not apply to ‘bodily injury,’ ‘property damage,’ ‘personal injury,’ or ‘advertising injury’ arising out of any act of assault and/or battery by any insured or additional insured.” Accordingly, Admiral argues, the trial court erred in finding that coverage existed because it is undisputed that Price-Williams’s injuries arose out of an assault in which Dean and Baber participated.
In support of this argument, Admiral cites Gregory v. Western World Insurance Co., 481 So.2d 878 (Ala.1985), in which this Court affirmed a judgment declaring that a plaintiffs negligence and wantonness claims against a bar based on injuries he received after being assaulted by a patron at the bar were not covered by the bar’s insurance policy because the policy specifically excluded any claim alleging “ ‘bodily injury or property damage arising out of assault and battery ..., whether caused by or at the instigation or direction of the insured, his employees, patrons, or any other person.’ ” 481 So.2d at 878 (quoting insurance policy).
Price-Williams concedes that, based on the clear terms of the assault-and-battery exclusion in the policy, injuries attributable to Dean’s and Baber’s participation in the assault were not covered under the Admiral policy. However, he nevertheless argues that coverage exists for his claim because the Admiral policy excludes only coverage for bodily injury “arising out of any act of assault and/or battery by any insured or additional insured” and he was assaulted not only by Dean and Ba-ber — who were additional insureds under the Admiral policy — but also by Howard, who was not an insured or additional insured under the Admiral policy (emphasis added). Price-Williams argues that this limiting language in the assault-and-battery exclusion differentiates the Admiral policy from the broader assault-and-battery exclusion in the insurance policy at issue in Gregory—which excluded coverage for any claim alleging bodily injury arising out of assault and battery “ ‘whether caused by or at the instigation or direction of the insured, his employees, patrons, or any other 'person.’ ” 481 So.2d at 878 (quoting insurance policy (emphasis added)). Thus, Price-Williams argues, this case is distinguishable from Gregory.[9]
*997 However, Price-Williams’s argument that Howard’s involvement in the assault avoids the application of the assault-and-battery exclusion in the Admiral policy fails to recognize that his action against Admiral was brought pursuant to § 27-23-2 to seek payment of a judgment previously entered against Admiral insureds Dean and Barber in the underlying action. In Haston v. Transamerica Insurance Services, 662 So.2d 1138, 1139-40 (Ala.1995) (reversed on other grounds by Travelers Indemnity Co. of Connecticut v. Miller, 86 So.3d 338 (Ala.2011)), this Court stated:
“A claim under §§ 27-23-1 and -2[, Ala.Code 1975,] to apply the proceeds of a contract of insurance to satisfy a judgment has been described by this Court as follows:
.‘“Under Alabama law, the injured party acquires a vested interest (secondary) in the nature of a hypothecation of the insured’s rights under the policy.
[[Image here]]
“ ‘Once an injured party has recovered a judgment against the insured, the injured party may compel the insurer to pay the judgment. The injured party, however, can bring an action against the insurer only after he has recovered a judgment against the insured and only if the insured was covered against the loss or damage at the time the injured party’s right of action arose against the insured tort-feasor.’
“Maness v. Alabama Farm Bureau Mut. Casualty Ins. Co., 416 So.2d 979, 981-82 (Ala.1982). The injured party’s ‘vested interest’ is subject to the further qualification that ‘the terms of the policy imposing obligations on the insured are effective as against the injured party.’ George v. Employers’ Liab. Assurance Corp., 219 Ala. 307, 310, 122 So. 175, 177 (1929); see James & Hackworth v. Continental Casualty Co., 522 F.Supp. 785, 787 (N.D.Ala.1980). Thus, defenses to liability available to the insurer in an action brought by the insured would also be available to the insurer in an action brought pursuant to §§ 27-23-1 and -2 by the injured party. Employers Ins. Co. v. Crook, 276 Ala. 177, 183, 160 So.2d 463, 469-70 (1964); Employers Ins. Co. v. Johnston, 238 Ala. 26, 31, 189 So. 58, 62 (1939); see Fleming v. Pan American Fire & Casualty Co., 495 F.2d 535, 541 (5th Cir.1974); Southeastern Fire Ins. Co. v. Helton, 192 F.Supp. 441, 444-45 (S.D.Ala.1961).”
(Emphasis added.) Thus, in this § 27-23-2 action, Price-Williams effectively stands in the shoes of the insured tortfeasors Dean and Baber in making his claim, and he is entitled to recover from Admiral only to the extent of Dean’s and Baber’s coverage for the claims asserted against them. It is acknowledged by all parties that Dean and Baber did not have coverage for their act of assault because of the assault-and-battery exclusion in the Admiral commercial general-liability insurance policy, and *998 that exclusion therefore prevents Price-Williams from recovering from Admiral as well.
The fact that Howard, a non-insured, also participated in the assault is ultimately of no effect. Price-Williams’s attempt to distinguish Gregory on the basis of the more broad assault-and-battery exclusion in that case misses the mark because Price-Williams is not attempting to require Admiral to fulfill a judgment entered against its insured Kappa Nu for injuries he received in an assault committed solely by a non-insured such as Howard; rather, he is attempting to require Admiral to fulfill a judgment entered against its insureds Dean and Baber for injuries he received as the result of an assault in which they participated. As we stated in Gregory: “[Ijnsurance companies are entitled to have their policy contracts enforced as written....” 481 So.2d at 881. The assault-and-battery exclusion in the Admiral policy excludes coverage for an act of assault committed by an insured such as Dean or Baber, and § 27-23-2 cannot be used to require Admiral to pay a judgment entered against an insured for injuries inflicted in a non-covered assault simply because a non-insured also participated in the assault.
Moreover, the assault-and-battery exclusion bars Price-Williams from recovering from Admiral on the basis of the negligence and wantonness claims he asserted against Dean and Baber based on their failure to implement a risk-management program for Kappa Nu even though that negligent or wanton conduct is not itself excluded from coverage. As the trial court stated in its final judgment, Dean’s and Baber’s negligent or wanton acts in failing to implement a risk-management program combined with the assault to result in “one indivisible injury” to Price-Williams. Stated another way, it is impossible. to allocate some portion of Price-Williams’s injuries and the award of damages based on those injuries to the failure to implement a risk-management program and some other portion to the assault. Compare Crews v. McLing, 38 So.3d 688, 694 (Ala.2009) (affirming the trial court’s judgment that there was not a “single indivisible injury” where expert witnesses were able to distinguish between damage to a mobile home attributable to the manufacturer and other damage attributable to the installer).[10] All of Price-Williams’s injuries arose from and were the product of the assault — notwithstanding the fact that the negligent or wanton failure to imple *999 ment a risk-management program may have been an additional proximate cause. See Springer v. Jefferson Cnty., 595 So.2d 1381, 1384 (Ala.1992) (recognizing that an injury may have several concurrent proximate causes).
The assault-and-battery exclusion in the Admiral policy states that there is no coverage for “ ‘bodily injury’ ... arising out of any act of assault and/or battery by any insured or additional insured.” All of Price-Williams’s injuries without question resulted from an act of assault in which additional insureds Dean and Baber participated. Therefore, regardless of the fact that there may have been a separate act that also contributed to Price-Williams’s injuries, there is no coverage in this case. The clear terms of the assault-and-battery exclusion must be enforced. See Auto-Owners Ins. Co. v. American Cent. Ins. Co., 739 So.2d 1078, 1081 (Ala.1999) (“If a policy provision is unambiguous, then a court must enforce the policy as it is written and cannot defeat express provisions, including exclusions from coverage.”).
IV.
Price-Williams sued Admiral pursuant to § 27-23-2 after obtaining a judgment against Dean and Baber, who he alleged were insured by Admiral under a policy Admiral had issued to Kappa Sigma, by virtue of their positions as officers of Kappa Nu. Following a bench trial, the trial court entered a judgment in favor of Price-Williams, obligating Admiral to fulfill the judgment entered against Dean and Baber in the underlying action. However, because the Admiral policy did not provide coverage to Dean and Baber for “any act of assault and/or battery” and because Price-Williams’s injuries undisputedly arose from an assault in which Dean and Baber participated, the trial court erred in holding Admiral responsible for the judgment entered against Dean and Baber in the underlying action. The trial court’s judgment is accordingly reversed and the cause remanded.
APPLICATION GRANTED; OPINION OF JANUARY 11, 2013, WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED.
BOLIN, PARKER, MAIN, WISE, and BRYAN, JJ., concur.
MURDOCK, J., concurs specially.
MOORE, C.J., and SHAW, J., concur in the result.

. Price-Williams named Dean and Baber as defendants based on their status as indispens *992 able parties under § 27-23-2, Ala.Code 1975. Section 27-23-2 provides:
"Upon the recovery of a final judgment against any person ... by any person ... for loss or damage on account of bodily injury, ... if the defendant in such action was insured against the loss or damage at the time when the right of action arose, the judgment creditor shall be entitled to have the insurance money provided for in the contract of insurance between the insurer and the defendant applied to the satisfaction of the judgment, and if the judgment is not satisfied within 30 days after the date when it is entered, the judgment creditor may proceed against the defendant and the insurer to reach and apply the insurance money to the satisfaction of the judgment.”

. Dean and Baber were, respectively, president and vice president of Kappa Nu at the time of the assault. Neither Price-Williams nor Howard were members of Kappa Nu.

. In the weeks after the assault, Dean, Baber, and Howard were arrested and charged with second-degree assault. Approximately four months later, Dean and Baber were expelled from Kappa Sigma because their involvement in the assault violated the Kappa Sigma code of conduct.

. See generally Black's Law Dictionary 1482 (9th ed.2009) (defining "self-insured retention” as "[tjhe amount of an otherwise-covered loss that is not covered by an insurance policy and that usufally] must be paid before the insurer will pay benefits”).

. Admiral assumed responsibility for the investigation and defense of Price-Williams’s claims in approximately July 2008 after Kappa Sigma’s costs related to that claim exceeded the amount set forth in the self-insured retention clause in the Admiral policy.

. Apparently, the trial court had set aside the default judgment previously entered against the three individual defendants,

. Baber filed a cross-claim against Admiral seeking a ruling that Admiral was required to indemnify him for the judgment entered against him in the underlying action. The trial court decided this claim in favor of Admiral, and Baber has not appealed that judgment.

. Counsel for Admiral was contacted by the trial court on the morning of the trial.

. The trial court agreed with Price-Williams’s argument in this regard, stating in its final *997 judgment:
"The assault and battery exclusion is unambiguous and clearly excludes coverage for any bodily injury suffered by [Price-Williams] caused by Dean and Baber’s conduct of assaulting him. This exclusion, however, is self-limiting, as it applies only to any damage[] due to the assault and battery by Dean and Baber, not any injuries caused by Michael Howard (since Howard was not an insured under the policy). Both Admiral and [Price-Williams] agree that three individuals were involved in assaulting [Price-Williams]: Dean, Baber, and Howard. Although Dean and Baber’s conduct of assault and battery is excluded under the policy, because Howard was not an insured under the policy, this exclusionary clause does not apply to the damage[] caused by Howard’s conduct.”

. This Court further explained the concept of an indivisible injury in State Farm Fire & Casualty Co. v. Slade, 747 So.2d 293 (Ala.1999). In Slade, the plaintiffs sued a number of contractors involved in the construction of their house, as well as State Farm, which had issued a homeowners’ insurance policy on that house, after foundation problems became apparent. This Court concluded that these defendants had not combined to cause one indivisible injury, stating:
"In the present case, there was no ‘single, indivisible injury’ caused by the construction defendants and State Farm. In fact, there were two injuries flowing from two separate allegedly tortious acts: (1) damage caused by the alleged negligent and/or wanton construction that was done by the construction defendants and (2) damage caused by the alleged bad-faith refusal to pay an insurance claim. Also, the injuries the [plaintiffs] claim to have suffered were not indivisible. Moreover, the acts of the two groups of defendants did not combine to cause any one injury. State Farm took no part in the construction of the home, and the construction defendants took no part in the refusal to pay an insurance claim.”
747 So.2d at 325. In the present case, two separate tortious acts have also been alleged; however, unlike Slade, there is no basis for dividing the plaintiff's injuries between those two acts, and the same individuals responsible for one act (the negligent or wanton act) also participated in the second act (the assault and battery).