[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-11009

Non-Argument Calendar

_____

ROBERT BARTON,
MINDY BARTON,

                                        Plaintiffs-Appellants,

STACY ALLISTON DESIGN AND BUILDING, INC.,

                                        Plaintiff,

*versus*

NATIONWIDE MUTUAL FIRE INSURANCE COMPANY,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 2:17-cv-00618-SLB

_____

Before JORDAN, NEWSOM, and LUCK, Circuit Judges.

PER CURIAM:

Robert and Mindy Barton obtained a judgment against Stacy Alliston Design and Building, Inc., the general contractor on their house, and then sued Alliston's insurer, Nationwide Mutual Fire Insurance Company, to satisfy the judgment under Alabama's direct action statute. *See* Ala. Code § 27-23-2. After a bench trial, the district court found for Nationwide because estoppel could not create coverage under Alabama law and the Bartons failed to establish coverage. We affirm.

## FACTUAL BACKGROUND

We divide our discussion of the facts into three sections. First, we discuss the defective construction of the Bartons' house. Second, we relate the state court procedural history of the Bartons' case against Alliston. Third, we describe Alliston's commercial general liability insurance policies with Nationwide.

### The Defective Construction of the House

The Bartons contracted with Alliston to build a custom house for almost $700,000. Alliston hired subcontractors to build the house, some of whom did defective work. For example,

subcontractors left holes in the roof and didn't properly install windows.

During their first year in the house, the Bartons noticed water leaking from the roof and windows, among other problems. The water rotted the roof and stained and cracked the house. Alliston told the Bartons that faulty flashing[1] was probably responsible.

The Bartons hired Crown Construction Consulting to inspect their house. Crown identified construction defects in the roof and around the windows, including problems that Alliston was supposed to have solved. Crown also identified other problems that the Bartons hadn't known about before. And Crown pointed out that water was leaking into electrical outlets and creating a fire hazard.

In 2015, the Bartons hired Donnie Jones, a residential homebuilder, to provide an estimate to repair the house. Mr. Jones determined that Alliston hadn't properly installed flashing and housewrap[2] around the windows and that this defective installation caused leaking, which rotted the house and weakened its structural integrity. Mr. Jones estimated that repairs would cost around $288,000.

---

[1] In residential construction, flashing is material that prevents water from getting into a house.

[2] Like flashing, housewrap prevents water from entering a house.

*The State Court Proceedings*

The Bartons brought negligence claims and wantonness claims against Alliston in state court. The Bartons alleged that Alliston damaged their house by violating building codes and industry standards when Alliston constructed and repaired the house and by mismanaging the subcontractors. The Bartons sought damages for the diminution in market value of the house, the cost of repairing the house, and physical injury, mental anguish, and emotional distress.

Nationwide initially provided for Alliston's defense under its policy but withdrew the defense in December 2012. In a joint statement of undisputed facts filed in the district court, the Bartons and Nationwide represented that, in the state court action, Nationwide first "provided a defense to [Alliston] while reserving its rights to review and withdraw coverage" and then "obtained a coverage opinion from qualified counsel," which led it to withdraw its defense. Alliston did not retain its own defense counsel after Nationwide withdrew.

The Bartons moved for summary judgment on their negligence and wantonness claims. As to negligence, the Bartons contended that Alliston failed to use reasonable care in performing contracted-for construction services. As to wantonness, they argued that Alliston knew that it was violating building codes and thus knew that damages would likely result. The Bartons identified damages involving flashing, housewrap, windows, roofing, and more.

To support summary judgment, Mr. Barton submitted a five-paragraph affidavit stating that Alliston's actions caused him $450,000 in property damage, as well as the same amount in "physical injury in the form of emotional distress" because the damage to his house caused him "stress and anxiety." Mr. Barton based the amount of property damage on conversations that he had with two friends who worked in construction.

The state court granted summary judgment to the Bartons. In a four-sentence order, the state court awarded the Bartons the $900,000 they had sought. It said, without elaboration, that the amount was "based on evidence submitted by [the Bartons] regarding damages sustained to their home and emotional distress."

### The Insurance Policies

From December 2005 to March 2009, Alliston had four annual policies of commercial general liability insurance with Nationwide. Each policy provided that Nationwide would pay what Alliston became legally obligated to pay as damages because of covered bodily injury or property damage. Under each policy, Alliston had $2,000,000 in supplemental products-completed operations coverage.

The policies covered only bodily injury or property damage caused by an "occurrence" during the policy period. And they defined "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policies only covered occurrences discovered during

the policy period, though they also covered a continuation, change, or resumption of property damage that occurred during the policy period.

The policies contained several exclusions.  First, the policies didn't cover bodily injury and property damage that Alliston "expected or intended" to occur.  Second, the policies contained broad exclusions for bodily injury and property damage resulting from fungi, including mold.  And, third, the policies excluded "'property damage' to 'your work' arising out of it or any part of it" provided that the damage was "included in the 'products-completed operations hazard.'"

As to the "your work" exclusion, the policies defined "products-completed operations hazard" to include, subject to exceptions, "all 'bodily injury' and 'property damage' occurring away from premises [Alliston] own[ed] or rent[ed] and arising out of 'your product' or 'your work'" provided that the work was completed.  The policies defined "your work" as (1) work performed by Alliston or on its behalf and (2) materials, parts, or equipment provided in connection with this work.  And they specified that "your work" included warranties or representations about the quality of "your work."

Under the first two annual policies, the "your work" exclusion didn't apply to damages arising from work performed for Alliston by subcontractors.  But, under the last two policies, the exclusion applied to damages arising from subcontractor work.

21-11009               Opinion of the Court                    7

## PROCEDURAL HISTORY

The Bartons sued Nationwide under Alabama's direct action statute, section 27-23-2, to satisfy their state court judgment against Alliston. The Bartons alleged that they could stand in Alliston's shoes and assert a direct right of action against Nationwide because they were third-party beneficiaries of Alliston's policies with Nationwide.[3]

The district court held a bench trial on the Bartons' direct action claim. The Bartons testified on their own behalf and called Mr. Jones as a witness. Nationwide called no witnesses. After the Bartons rested their case, Nationwide moved for judgment as a matter of law. In response to this motion, the district court asked for proposed findings of fact and conclusions of law from the parties.

Nationwide argued that the Bartons sought compensation for defective work itself (not covered) rather than for damages

---

[3] When an injured party obtains a judgment against an insured, Alabama's direct action statute entitles that injured party, as judgment creditor, to satisfy the judgment by suing the insured's insurer directly. *See* Ala. Code § 27-23-2. The statute "plainly limits recovery by the judgment creditor to . . . the insurance money provided for in the contract of insurance between the insurer and the [insured]." *Dumas Bros. Mfg. Co. v. S. Guar. Ins. Co.*, 431 So. 2d 534, 536 (Ala. 1983) (quotation omitted). The injured party "stands in the shoes of the insured" and "is entitled to recover from [the insurer] only to the extent of [the insured's] coverage for the claims asserted." *Admiral Ins. Co. v. Price-Williams*, 129 So. 3d 991, 997 (Ala. 2013) (emphasis omitted).

resulting from that work (potentially covered), that the mold exclusion applied, and that the last two policies didn't cover damages arising from subcontractor work. Nationwide also contended that the district court was not bound by the state court judgment, which was not supported by the evidence presented at trial, that the Bartons presented insufficient evidence to establish their emotional distress damages, and that repairs made to the house differed from the damages about which Mr. Jones testified.

The Bartons argued that Nationwide was estopped from contesting coverage because it withdrew its defense of Alliston in the state court and failed to prove in the district court that it had reserved its rights to contest coverage and because it violated its enhanced duty of good faith by failing to prove that it fully informed Alliston of the coverage disputes that Nationwide claimed in the district court. The Bartons also contended that the instances of water leaking into their house qualified as "accidents" and thus "occurrences" under the policies, that the property damages resulted from defective work and were thus covered, and that the costs to remove defective work to replace and repair the damages caused by that defective work were covered. And the Bartons maintained that all the policies covered subcontractor work because Alliston bought products-completed operations coverage and that the record supported the emotional distress award in the state court judgment.

The district court entered judgment for Nationwide because the Bartons "failed to show what, if any, damages Nationwide

[wa]s required to indemnify" and thus failed to meet their burden to prove coverage.  As to estoppel, the district court explained that "Alabama law d[id] not allow estoppel to create coverage—and, thus, indemnification—under an insurance policy," so the Bartons could not "rely on estoppel to require Nationwide to indemnify their damages against [Alliston] where the damages [we]re not covered."  The district court concluded that the Bartons had to prove that Alliston's policies with Nationwide covered the damages awarded by the state court, and the Bartons failed to do so because the state court awarded them damages in a nonspecific judgment that could have been for wantonness (not covered) or negligence (potentially covered), for defective construction (not covered) or damages resulting from the defective construction (potentially covered), and for emotional distress based on mold (not covered) or on other concerns (potentially covered).  The Bartons established that they "experienced some damage to their home that *could* be covered by the Nationwide polic[ies] as resulting from faulty construction," the district court explained, but they did not meet "their burden of proving that Nationwide [wa]s required to indemnify any of the state court's judgment because [they] failed to show the amount of damages arising out of the covered injuries."  The district court also explained that, although Mr. Jones testified about the cost of repairing the water damage to the Bartons' house, he did not "offer insight into the portion of the state court judgment related to covered occurrences" or "provide any information for the state court proceedings underlying the Bartons' claim."

## STANDARD OF REVIEW

In an appeal from a judgment after a bench trial, we review the district court's conclusions of law and its application of the law to the facts de novo.  *U.S. Commodity Futures Trading Comm'n v. S. Tr. Metals, Inc.*, 894 F.3d 1313, 1322 (11th Cir. 2018).

## DISCUSSION

The Bartons contend that the district court should not have allowed Nationwide to dispute coverage when Nationwide had not proven a reservation of rights to do so and had violated its enhanced duty of good faith to Alliston.  And the Bartons argue that the district court erred in determining that their wantonness claims barred indemnity for all their claims and damages.  We disagree.

### Estoppel

The Bartons assert that, because "Nationwide failed to submit any evidence—other than statements of counsel which are not evidence—providing any reasons for withdrawing its defense of [Alliston] in the [underlying] action," and failed to show that it had reserved its rights to dispute coverage, it was estopped from contesting coverage in this action.  The Bartons argue that estoppel can create coverage under Alabama law where, as here, the insurer violates its enhanced duty of good faith to the insured.  Nationwide violated its duty, the Bartons say, because it didn't prove that it notified Alliston that Nationwide was disputing coverage.  The

21-11009                Opinion of the Court                11

Bartons maintain that they can seek estoppel because they stand in Alliston's shoes as judgment creditors.

The party seeking estoppel bears the burden of proving estoppel. *See Gen. Am. Life Ins. Co. v. AmSouth Bank*, 100 F.3d 893, 899 (11th Cir. 1996). Thus, the Bartons had the burden to prove that Nationwide did not reserve its rights and that it violated its enhanced duty of good faith to Alliston. *See Shelby Steel Fabricators, Inc. v. United States Fid. & Guar. Ins. Co.*, 569 So. 2d 309, 310, 312 (Ala. 1990).

The Bartons did not meet their burden. Although they complain that Nationwide did not submit evidence that it reserved its rights and fulfilled its enhanced duty of good faith, the Bartons also didn't submit any evidence to the contrary. And the burden was theirs, not Nationwide's.

In fact, the Bartons told the district court that it was *undisputed* that Nationwide reserved its rights to withdraw coverage in the Bartons' state court action against Alliston and that Nationwide only withdrew Alliston's defense in that action after qualified counsel determined that there was no coverage under the policies. On appeal, the Bartons seem to dismiss these representations as "statements of counsel which are not evidence." But this lack of evidence does not help the Bartons. Instead, it means that they failed to satisfy their burden.

Because the Bartons did not meet their burden of proving estoppel, the district court did not err in allowing Nationwide to contest coverage.

### Wantonness

The Bartons argue that the district court erred in concluding that their wantonness claims barred them from recovery. They contend that "there [wa]s absolutely zero record evidence—either before the state court or the district court—tending to show that [Alliston] acted intentionally or deliberately when its subcontractors improperly installed flashing on the home during construction." The Bartons claim that the district court based its conclusion on the state court pleadings rather than the evidence.

"[T]he party seeking coverage under [an insurance policy] bears the burden of proving that coverage exists." *Pa. Nat'l Mut. Cas. Ins. Co. v. St. Catherine of Siena Par.*, 790 F.3d 1173, 1180 (11th Cir. 2015). "When an insured causes multiple injuries, coverage is determined on an injury-by-injury basis, and the insurer is obligated only to indemnify for damages arising out of the covered injuries." *Id.* at 1178. When no jury verdict or final order or judgment in the underlying action identifies the specific injuries for which damages were awarded, "it is appropriate, under Alabama law, to look to the record . . . in the underlying action to identify the injuries for which the injured party sought damages." *See id.* at 1180.

A person is liable for wantonness under Alabama law where "his knowledge of existing conditions and circumstances" makes him "conscious that his conduct will probably result in injury" but he acts (or fails to act) "with reckless indifference or disregard of the natural or probable consequences" and causes the injury. *Reed v. Brunson*, 527 So. 2d 102, 119 (Ala. 1988) (quotation omitted); *accord Thermal Components v. Golden*, 716 So. 2d 1166, 1168 n.2 (Ala. 1998) ("'Wantonness' is the conscious doing of some act or the omission of some duty under knowledge of existing conditions [while] conscious that from the doing of such act or omission of such duty injury will likely or probably result." (quotation omitted)).

Here, the Bartons could recover from Nationwide only if Alliston could recover under the insurance policies. *See Price-Williams*, 129 So. 3d at 997. Alliston's policies with Nationwide provided that Nationwide would "pay those sums" that Alliston became "legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which th[e] insurance applie[d]." According to the policies, the insurance applied "only if . . . [t]he 'bodily injury' or 'property damage' [wa]s caused by an 'occurrence.'" The policies defined an "occurrence" as "an accident." Alliston's policies didn't define "accident," but in Alabama insurance law, "[t]he term 'accident' has been variously defined as something unforeseen, unexpected, or unusual." *U.S. Fid. & Guar. Co. v. Bonitz Insulation Co.*, 424 So. 2d 569, 572 (Ala. 1982). "When the insured makes an error in judgment but at all times act[s] in a deliberate

and purposeful manner, its conduct does not constitute an accident or occurrence." *St. Catherine of Siena Par.*, 790 F.3d at 1178 (quotation omitted).

The state court granted summary judgment to the Bartons in a brief order that did not specify any injuries. Thus, it was appropriate for the district court to review the Bartons' summary judgment motion to determine the specific injuries for which they were awarded damages so that the district court could determine whether the injuries were covered under the policies. *See id.* at 1180. The Bartons moved for summary judgment as to both negligence and wantonness. The Bartons argued that Alliston's "knowing failure to construct [the Bartons'] home to applicable code standards constitute[d] wantonness under Alabama law" because Alliston "knew it was not following applicable building codes[] and therefore knew that damages were likely to result." The Bartons cited the deposition of Alliston's corporate representative to support that Alliston knew that "it was ultimately responsible for the direction and supervision of all employees and subcontractors who performed work on [the Bartons'] home" and "was fully aware that it was not following the applicable building codes."

The district court concluded that the Bartons' wantonness claims "alleged conscious acts with an expectation of causing injury" and thus could not support coverage under the policies. On appeal, the Bartons' wantonness argument is only that no record evidence showed that Alliston acted intentionally in its mismanagement of its subcontractors. But, even if this is so, the Bartons also

point to no evidence of the opposite (that is, that Alliston did not act intentionally). The Bartons had the burden to establish that coverage applied. *See id.* And coverage applied only if the damages resulted from an accident—from something unusual that Alliston didn't foresee or expect, *see Bonitz Insulation Co.*, 424 So. 2d at 572—and not from something that Alliston was "fully aware" was "likely to result."

Like the district court, we cannot determine how much the state court awarded the Bartons damages for Alliston's negligence (potentially covered) versus its wantonness (not covered). Because the Bartons did not satisfy their burden to establish coverage, the district court did not err when it entered judgment for Nationwide. *See Ala. Hosp. Ass'n Tr. v. Mut. Assurance Soc'y*, 538 So. 2d 1209, 1216 (Ala. 1989) (explaining that, because the person seeking coverage had the burden of proof, "the trial court correctly resolved [the coverage] issue against [that person]" when the potential bases for the judgment in the underlying action included grounds covered and not covered under the policy and it was "impossible" to determine which of the grounds supported the jury's finding of liability).

## CONCLUSION

Because the Bartons did not meet their burdens of proving estoppel or coverage, the district court did not err in finding for Nationwide.

**AFFIRMED.**